In the Matter of DAIRYMEN'S LEAGUE CO-OPERATIVE ASSOCIATION, INC., Appellant, against C. CHESTER DU MOND, as Commissioner of Agriculture and Markets of the State of New York, et al., Respondents.

Third Department, May 13, 1953.

*Maurice A. Gellis, William H. Michaels, Jr.* and *William J. Moore* for appellant.

*Robert G. Blabey* and *Donald L. Brush* for *C. Chester Du Mond,* as Commissioner of Agriculture and Markets of the State of New York, respondent.

*Joe Schapiro* for Queensboro Farm Products, Inc., respondent.

HALPERN, J. This is an appeal from an order dismissing a proceeding under article 78 of the Civil Practice Act brought to review a determination of the Commissioner of Agriculture and Markets, granting an extension of the milk dealer's license held by the respondent Queensboro Farm Products, Inc., so as to authorize it to construct and operate a milk receiving plant at Earlville, New York.

This appeal poses the question of whether a licensed milk dealer has a statutory or constitutional right to be heard in opposition to the application of a prospective competitor, and, if the application is granted, to review the determination.

The petitioner at one time had maintained a plant in Earlville but it had closed the plant and had arranged to have the producers in the area deliver their milk to other plants of the petitioner. The petitioner contends that the establishing of a plant by the respondent Queensboro would injuriously affect the petitioner's business and would tend to destructive competition in the producing area in the vicinity of Earlville and would not be in the public interest.

The petitioner was notified of the hearing upon the Queensboro application, to the extent of being advised of the time and place of the hearing, but the petitioner was not allowed to become a party to the proceeding and was not allowed to produce proof or to examine or cross-examine the witnesses. The commissioner had advised all licensed milk dealers in the area that if they wished to oppose the granting of the license, they should communicate with the hearing representative in advance of the hearing and acquaint him with any evidence they wished to have presented. The hearing representative then would decide what proof to present and how to present it.

This form of procedure was adopted by the commissioner immediately after the amendment of section 258-c of the Agriculture and Markets Law by chapter 502 of the Laws of 1950. The statute as it read prior to the amendment provided that no license should be granted unless the commissioner was satisfied that the applicant was a qualified person, that the issuance of the license would not tend to a destructive competition and that the issuance of the license was in the public interest. There was no specific provision as to the procedure to be followed by the commissioner in determining these issues. It was the practice of the commissioner to hold a hearing, not only on notice to the applicant but also to all competitors who were serving in the area which would be affected by the granting of the application. Competitors were allowed to appear as parties to the proceeding and to produce witnesses and to cross-examine the witnesses produced by the applicant and other parties. When that procedure was followed, this court held that a competitor who had been notified of the hearing and had been allowed to participate therein was entitled to review the determination of the commissioner, adverse to the

protestant, under section 258-d (*Matter of Bullis* v. *Du Mond*, 274 App. Div. 951). It was held in the *Bullis* case that, whether or not the commissioner was required by the statute to give notice to competitors, if he actually gave such notice and allowed a competitor to become a party, the competitor had the right to review an adverse determination as an "aggrieved party". Upon the final review in the *Bullis* case, the court held that the effect of its prior decision was to be "strictly limited to the procedural facts" present in that case (276 App. Div. 882). (See similar rulings recognizing that a competing public utility company which had been permitted by the Public Service Commission to become a party to the proceeding, upon an application by a rival company for a certificate, had the right to review the determination granting the certificate as an aggrieved party. (*People ex rel. New York Central & Hudson Riv. R. R. Co.* v. *Public Service Comm.*, 195 N. Y. 157; *People ex rel. New York Edison Co.* v. *Willcox*, 207 N. Y. 86.)

In 1950, section 258-c was radically amended. The amendment shifted the burden of proof from the applicant to the commissioner. Instead of requiring the applicant to establish that it was entitled to a license, the statute provided in effect that the license should be granted unless the commissioner found "by a preponderance of the evidence, after due notice and opportunity of hearing to the applicant or licensee" that one or more of the adverse factors enumerated in the statute existed as a ground for denial of the license. It will be noted that the amendment specifically limited the "notice and opportunity of hearing" to the applicant or licensee and made no mention of notice to anyone else.

Immediately after the taking effect of the amendment, the commissioner adopted the new procedure referred to above, of which all milk dealers were notified by a circular letter dated May 12, 1950. First of all, it was stated that "If the facts available upon the receipt of complete answers to all the questions in the application form make it clear that the application should be granted, no hearing will be held". The granting of a license without a hearing in accordance with the commissioner's announcement was plainly authorized by the statute. The statute required the commissioner to afford the applicant a hearing before denying the application but if the commissioner was satisfied on the face of the application that the granting of the license was in the public interest, he could grant the license without any hearing. (Cf. *Matter of Elite Dairy Products* v.

*Ten Eyck,* 271 N. Y. 488, 497.) The commissioner's announcement further stated that, if a hearing was held, an effort would be made to inform those who might be interested but that the applicant and the Director of Milk Control would be the only parties to the hearing and that they would be the only ones who would be allowed to introduce evidence. If any one desired to oppose the granting of the license, he was advised to communicate with the hearing representative in advance of the hearing and to acquaint him with the evidence he wished to have presented.

The hearing here sought to be reviewed was held under the new procedure. The petitioner was not allowed to become a party and was not allowed to examine or cross-examine witnesses but was allowed to suggest lines of proof to the hearing examiner. This was in accordance with the procedure outlined by the commissioner, which was well within his authority under the statute.

In the *Bullis* case, relied upon by the appellant, the petitioner had become a party to the proceeding before the commissioner at the commissioner's own invitation. Regardless of whether the invitation was required under the statute as it read at that time or not, it is clear that under the statute in its present form, the commissioner is not required to allow a competitor to become a party to the license proceeding, and the commissioner scrupulously refrained from making the appellant a party in this case.

This brings us to the question of whether the statute is valid and whether due process of law is violated by denying to an existing licensee, who might be adversely affected by the competition of a prospective licensee, the right to be heard in opposition to the granting of the license.

The petitioner's due process argument was undermined by the concession by its counsel upon the oral argument that the commissioner had the power to grant a license to the respondent Queensboro without holding any hearing. If the license could be granted without hearing without violating due process, the petitioner could not consistently claim that the due process clause required that he be made a party to the hearing, if the commissioner decided to hold a hearing in order to obtain more information before acting upon the application.

Apart from the effect of the concession by the petitioner's counsel, it seems clear to us that there was no violation of due process in the procedure adopted by the commissioner.

The economic interest of the existing licensees in an industry does not entitle them to be heard as a matter of constitutional right before additional members are admitted to the industry

(Davis on Administrative Law, pp. 289–290; Byse on Opportunity to be Heard in License Issuance, 101 U. of Pa. L. Rev. 57, 98). The due process clause does not guarantee freedom from the economic injury which may result from competition (*Hegeman Farms Corp.* v. *Baldwin,* 293 U. S. 163, 170–171). In an industry which is subject to regulation, the Legislature may at will license additional members of the industry even though their entry may adversely affect the economic interests of those already in it. Likewise, the administrative agency entrusted with regulation as the delegate of the Legislature, may, in accordance with the standards of procedure specified by the Legislature, license additional members of the industry. The Legislature usually requires that the administrative agency give consideration to the effect upon existing members of the industry of admitting additional competitors, in determining whether to grant or to deny a license. But this requirement is not designed primarily for the advancement of the financial interests of the existing licensees; it is designed rather to promote the public interest, the Legislature recognizing that it is in the public interest to protect the solvency and stability of the existing licensees in order to enable them to continue to render adequate service at reasonable prices. While the Legislature may provide for notice to existing licensees in order to give them an opportunity to be heard on this issue, the Legislature is not bound to do so. It may, if it chooses, provide for the determination of the issue by the administrative agency upon the basis of its own research and investigation and upon notice only to the applicant. The due process clause does not control the Legislature's choice of method.

The situation is different where the interest of the existing licensees is not merely an economic one in freedom from competition but is a direct interest in the protection of their licenses against physical interference or impairment. Thus, for example, in the licensing of radio broadcasting stations, the licensing of an additional station using the same or a near-by channel may interfere physically or electronically with the operations of an existing licensee. In a case where the licenses are mutually exclusive or where the operation by the new licensee would have a substantial physical effect upon the operations of existing licensees, due process may well require that notice and an opportunity to be heard be given to the persons affected. (Cf. *Communications Comm'n* v. *N. B. C.,* 319 U. S. 239, and *Ashbacker Radio Co.* v. *F. C. C.,* 326 U. S. 327.) But this principle obviously

has no application to licenses for the distribution of milk; no physical interference or mutual exclusiveness is involved.

The petitioner further argues that, even though it had no right to become a party to the proceeding, it is entitled to review the determination made at the conclusion of the proceeding. There is neither a statutory nor a constitutional basis for this claim. Not having been a party to the proceeding before the administrative agency, either as of right or by the voluntary consent of the agency, the petitioner has no standing to review the determination as " an aggrieved party ", pursuant to section 258-d of the Agriculture and Markets Law, under article 78 of the Civil Practice Act. Neither does the due process clause confer any standing upon the petitioner to maintain a review proceeding. The reasons canvassed above for holding that an ordinary competitor has no constitutional right to be heard by the administrative agency equally dictate the conclusion that he has no constitutional right to review the agency's determination. The case of *Commission* v. *Sanders Radio Station* (309 U. S. 470) cited by the petitioner, did not hold anything to the contrary. The decision did not rest upon due process; it was based upon the construction of the particular Federal statute before the court. Furthermore, it should be noted that the competitor seeking review in that case had been a party to the proceeding before the administrative agency. (See generally on the question of standing to challenge an administrative determination, Davis on Administrative Law, pp. 680–701.)

It is true that, under the conclusion here reached, no one has the right to invoke judicial review under article 78 of the Civil Practice Act of a decision by the commissioner granting a license to a new member of the industry in a proceeding held on notice only to the applicant. But this result is the one which the Legislature must have contemplated in adopting the amendment to the milk control statute. Under the legislative plan, the commissioner is made the sole guardian of the public interest in the granting of licenses. Nothing in the due process clause deprives the Legislature of the power to adopt such a plan.

The court below correctly dismissed the petition. The order appealed from should be affirmed, with $50 costs to be equally divided between the respondents.

'Foster, P. J., Brewster, Bergan and Imrie, JJ., concur.

Order affirmed, with $50 costs to be equally divided between the respondents.