John L. Larkin, J.
Dairylea Cooperative, Inc., the petitioner, brings this motion for a (judgment pursuant to CPLR article 78 annulling and setting aside the determination of the Commissioner of Agriculture and Markets granting an extension of the milk dealer’s license of Glen and Mohawk Milk Association, Inc. Dairylea Co-operative, Inc., (Dairylea) is a milk dealer licensed to sell milk in many counties of the State of New York, including Rockland and Orange. Glen and Mohawk Milk Association, Inc., (Glen and Mohawk) is a milk dealer licensed to sell milk in several counties of the State of New *708 York. Prank Walkley is Commissioner of the Department of Agriculture and Markets of the State of New York (the Commissioner) and, upon application of Cien and Mohawk, pursuant to section 258 of the Agriculture and Markets Law, granted Cien and Mohawk’s application for an extension of its milk dealer’s license to include all of Rockland County and a part of Orange County, which said areas are now being serviced by several licensed milk dealers, including Dairylea. The aforesaid application of Cien and Mohawk for an extension of its license was granted on April 16, 1974 by the Commissioner, through the Division of Milk Control of the Department of Agriculture and Markets, without any hearing and in accordance with section 258 of the Agriculture and Markets Law. On May 22, 1974 petitioner Dairylea commenced this article 78 proceeding to annul and set aside the department’s granting of Cien and Mohawk’s application.
It is conceded by all the parties that no notice of Cien and Mohawk’s application to extend their license was given to anyone including, of course, Dairylea, nor was Dairylea or anyone else afforded an opportunity to present evidence to the Commissioner in opposition to the application of Cien and Mohawk. Dairylea contends that had it been given notice and afforded an opportunity to present evidence to the Commissioner, it would have shown that the counties in question were adequately served by the present licensees, that the issuance of a license to Cien and Mohawk would create destructive competition and that the issuance of the license to Cien and Mohawk would not be in the public interest.
Dairylea supports its contention by alleging in its moving and supporting papers that Cien and Mohawk, because of favorable labor agreements, enjoys a financial competitive advantage amounting to approximately 3%^ a quart and it would be only a matter of time, until that competitive advantage would enable it (Cien and Mohawk) to “ control substantially all of the sales to supermarkets” in Orange and Rockland Counties which account for “ in excess of 50% of milk sales ” in the present market today. In short, Dairylea offers to prove, if given the opportunity, that the entrance of Cien and Mohawk into the area now licensed by the Commissioner (Orange and Rockland Counties), will make the market area economically impossible to be serviced by the present licensees and thus, presumably, they will be unable to continue in business, at least in that area.
The Department of Agriculture and Markets through the Commissioner, for its answer, alleges that after considering *709 Glen and Mohawk’s application, it was determined that Glen and Mohawk’s entry into the market would not tend to be destructive competition. The Commissioner further determined that no hearing was necessary pursuant to the provisions of section 258-c of the Agriculture and Markets Law. The Commissioner further states that he has complied with the administrative process and that the petitioner had no constitutional or statutory right to participate in the process, nor does petitioner Dairylea have a vested legal right to be protected from, additional competition in Orange and Rockland Counties.
The Commissioner also raises the defense of the Statute of Limitations in that any action to review his determination must be commenced within 30 days from the date of service upon the party affected by the Commissioner’s decision (Agriculture and Markets Law, § 258-d). Under section 258-d, the 30-day period runs “ from the date of service thereof upon the party affected thereby ”. It is conceded by all parties that Dairylea was given no notice of any type so that if this court determines that the petitioner Dairylea has standing to challenge the Commissioner’s decision, then this application is timely. Respondent Glen and Mohawk also filed an answer stating essentially the same questions and defenses as were raised by the Commissioner in his answer. The Commissioner, through Herbert R. Kling, Director of the Division of Dairy Industries of the Department of Agriculture and Markets, has submitted an affidavit in support of the decision to grant the license, citing such reasons as tremendous population increases in Orange and Rockland Counties, the high average of per capita consumption of fluid milk, and other data relevant to the Commissioner’s determination of whether or not other milk dealers should be admitted to the area in question to sell milk at wholesale.
Article 21 of the Agriculture and Markets Law is the milk control law and vests certain powers in regard thereto to the Commissioner of Agriculture and Markets and his delegated assistants. In pertinent part, section 258-c of article 21 states as follows : “ No license shall be denied to a person not now engaged i/n busmess as a milk dealer, or for the continuation of a now existing business, and no license shall be denied to authorize the extension of an existing business by the operation of an additional plant or other new additional facility, unless the commissioner finds by a preponderance of the evidence, after due notice and opportunity of hearing to the applicant or licensee, one or more of the following: (1) that the applicant is not qualified by character or experience or financial responsibility * * # (2) *710 that the issuance of the license will tend to a destructive competition in a market already adequately served; or (3) that the issuance of the license is not in the public interest (Emphasis supplied.) It is to the procedure of the Commissioner in accordance with this section that this article 78 proceeding is directed.
The facts are not in dispute. Glen and Mohawk made an application to the Commissioner which was processed and granted without a hearing and without notice to Dairylea and others who were presently servicing the market to which the application of Glen and Mohawk was directed. The question for this court to answer is whether or not under the existing statute and case law of the State of New York and the United States, the Commissioner should have given notice of the application to Dairylea and others and afforded them an opportunity to appear and present objections to the granting of the license to Glen and Mohawk.
The respondents in support of their request to dismiss the instant proceeding rely heavily upon Matter of Dairymen’s League Co-op. Assn. v. Du Mond (201 Misc. 354, affd. 282 App. Div. 69, app. dismd. 306 N. Y. 595). The case is squarely on point and the appeal to the Appellate Division was brought from an order dismissing a proceeding under article 78 of the Civil Practice Act which sought to review a determination of the Commissioner of Agriculture and Markets granting an extension of a milk dealer’s license. In the language of Mr. Justice Halperít writing for a unanimous court, the issue in the Du Mond case was stated as follows: “ This appeal poses the question of whether a licensed milk dealer has a statutory or constitutional right to be heard in opposition to the application of a prospective competitor, and, if the application is granted, to review the determination. ’ ’ (Matter of Dairymen’s League Co-op. Assn. v. Du Mond, 282 App. Div. 69, 71.)
The very section in question here was challenged in the Du Mond case. Mr. Justice Halpern further stated in that decision (p. 73): “ This brings us to the question of whether the statute is valid and whether due process of law is violated by denying to an existing licensee, who might be adversely affected by the competition of a prospective licensee, the right to be heard in opposition to the granting of the license.”
The unanimous decision in the Du Mond case reaffirmed the principle of law that (pp. 73-74): “ The economic interest of the existing licensees in an industry does not entitle them to be heard as a matter of constitutional right before additional members are admitted to the industry * * * The due proc *711 ess clause does not guarantee freedom from the economic injury which may result from competition * * * In an industry which is subject to regulation, the Legislature may at will license additional members of the industry even though their entry may adversely, affect the economic interests of those already in it * * * While the Legislature may provide for notice to. existing licensees in order to give them an opportunity to be heard on this issue, the Legislature is not bound to do so. It may, if it chooses, provide for the determination of the issue by the administrative agency upon the basis of its own research and investigation and upon notice only to the applicant. The due process clause does not control the Legislature’s choice of method.”
The decision went on to say (p. 75): “ It is true that, under the conclusion here reached, no one has the right to invoke judicial review under article 78 of the Civil Practice Act of a decision by the commissioner granting a license to a new member of the industry in a proceeding held on notice only to the applicant, But this result is the one which the Legislature must have contemplated in adopting the amendment to the milk control statute. Under the legislative plan, the commissioner is made the sole guardian of the public interest in the granting of licenses. Nothing in the due process clause deprives the Legislature of the power to adopt such a plan.”
The Du, Mond case was buttressed by a Third Department decision in Matter of Bank v. Allen (35 A D 2d 245). In Matter of Bank v. Allen, an ad hoc committee of pharmacists was denied standing to challenge the issuance of a license to a new pharmacy. The Appellate Division stated in part (pp. 247-248): “ Since there is no statutory provision requiring a hearing, and since economic competition is not a factor to be considered by the State Board of Pharmacy on such an application, the Emergency Committee had no standing or right to be heard before the board.”
Again in Matter of Bank v. Allen, the court stated in a unanimous decision (p. 248): “ the appellants have no legal standing to maintain this proceeding to review the issuance of the certificate of registration to operate a pharmacy to another, merely because of the economic effect upon them and the additional competition which would result.”
The holding in Matter of Dairymens League Co-op. Assn. v. Du Mond (282 App. Div. 69, supra) would ordinarily mandate that the instant petition be dismissed for Du Mond is squarely on the point. However, as the petitioner points out, in the 20 *712 years that have elapsed since Du Mond, changes in the law, particularly in decisions by the United States Supreme Court, have reversed or at least eroded Du Mond to the point where it is no longer the settled case law in the area of administrative decisions. It is the contention of the petitioner that the rule that “ economic injury which may result from competition ” ensuing from an administrative determination is insufficient to confer standing to bring suit, is no longer the law in the light of more recent cases and it is argued that an existing business suffering economic injury resulting from an administrative ruling permitting a competitor to enter that business has, standing to challenge that administrative determination.
The leading cases in that regard are Data Processing Serv. v. Camp (397 U. S. 150) and Arnold Tours v. Camp (400 U. S. 45). It is these cases which created the so-called “ zone of interest ” test. In Data Processing Serv. v. Gamp (supra), a group of sellers of data processing services sought to challenge a ruling of the Comptroller of the Currency permitting national banks to provide data processing services to other banks and bank customers in competition, of course, with data processing sellers. That case, in the United States Supreme Court, provided this guideline to determine whether a litigant has standing (pp. 152-153): “ The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise * * * [The second question is] whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.”
' The first test, of course, is obvious: Has the plaintiff suffered economic injury? The second prong of the test for standing has been: Does the statute in question have as its purpose the protection of the suitor as distinguished from the public?
In Arnold Tours v. Camp (supra) the Supreme Court applying that test, determined that a group of independent travel agents had standing to seek to invalidate a determination of the Comptroller of Currency permitting banks to provide travel services. In both of those cases (Arnold and Data Processing) the court determined that Bank Service Corporation Act (U. S. Code, tit. 12, § 1864) providing, inter alia, that 1 ‘ no bank service corporation may engage in any activity other than the performance of bank services for banks ”, arguably brought the plaintiffs within the zone of interest protected, by that statute..
Subsequent to the pronouncements of the United States Supreme Court in the Data Processing (supra) and Arnold *713 Tours cases (supra) and their progeny, the New York State Court of Appeals had occasion to pass upon the issue in Columbia Gas of N. Y. v. New York State Elec. & Gas Corp. (28 N Y 2d 117). In Columbia Gas the defendant entered into a contract with a municipality at a special contract rate to sell electric energy at less compensation than that which was being charged to other persons for a like service which, according to the case, was in violation of section 65 of the Public Service Law. Columbia Gas, the plaintiff, brought an action against the defendant corporation, seeking a declaration that those contracts violated section 65 of the Public Service Law and other sections of the General Business Law.. The plaintiff and defendant are in competitive industries serving the same location. The majority opinion written by Chief Judge Fuld in the Columbia Gas case contains the following interesting statements (p. 123): “ The threshold challenge to the plaintiff’s standing to maintain the first capse of action is quickly answered. The contracts between the defendant and local municipalities, according to the plaintiff, have the effect of sufficiently reducing lighting charges so as to overcome the economic advantage of heating with gas instead of electricity — in consequence of which, the plaintiff asserts, municipalities will be induced to use electricity (supplied by the defendant) instead of gas for space heating in the construction or remodeling of municipal buildings. This claim of economic injury, caused by the business practices of a competitor in violation of the Public Service Law * * * is sufficient to confer standing * * * It may not be gainsaid, to quote from a recent decision of the Supreme Court, that the 1 interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute ’. ’ ’
In a strong dissent in the Columbia Gas case( supra), Judge Bbeitel, now Chief Judge Bbeitel, stated (p. 130): “ Under the broad ‘ zone of interests ■’ test, which now seems to have displaced the older ‘ legal interest ’ test, a competitor may have standing to protest a harmful administrative determination or to sue if an available statute has as its purpose the protection of the suitor as distinguished from the public * * . * But there isfio doubt, that the new Federal rule, which does not necessarily determine the State rules on standing, might broaden the horizon for standing in State cases and it may be that the horizon extends even further. That being so, it may be better for the purposes of this action to assume that plaintiff does have standing, extremely doubtful though it be.” (Emphasis supplied.)
*714 In view of the Federal eases cited herein and the Columbia Gas of N. Y. v. New York State Elec. Gas Corp. case (28 N Y 2d 117, supra), the respondents’ reliance upon Matter of Dairymen’s League Co-op. Assn. v. Du Mond (282 App. Div. 69, supra) and Matter of Bank v. Allen (35 A D 2d 245, supra) is shaky indeed. The petitioner may have standing to protest the decision of the Commissioner if that administrative determination has a harmful effect on the petitioner and there is an available statute with its purpose the protection of the suitor as distinguished from the public. For the purposes of this decision, this court will assume that Dairylea will suffer economic loss as a result of the Commissioner’s determination in the instant proceeding and, therefore, it is a “ harmful administrative determination ’ ’ insofar as it applies to Dairylea.
It is on the second prong of the test that petitioner cannot prevail. Section 258-c of article 21 of the Agriculture and Markets Law recites in part, “ and no license shall be denied to authorize the extension of an existing business * # * unless the commissioner finds by a preponderance of the evidence, after due notice and opportunity of hearing to the applicant or licensee ’ ’, that the applicant is not qualified in one or more ways.
The Legislature, by the enactment of section 258-c of the Agriculture and Markets Law mandated the Commissioner of Agriculture and Markets to grant the petition of any applicant unless the applicant does not qualify by his failure to meet certain standards set forth in the statute and in that event, and only in that event, the Commissioner must give a hearing to the licensee so denied. It is uncontrovertible that the statute’s enactment was designed to direct the Commissioner to grant licenses to applicants unless the Commissioner found that the applicant was not qualified by virtue of certain reasons set forth in the section and the statute places the burden of proof on the department and the Commissioner to show that the application of a prospective milk dealer should be denied, if it is so determined by the Commissioner (see Governor’s Memorandum, L. 1950, ch. 502,1ST. Y. Legis. Annual [1950], p. 353).
The force and thrust of section 258-c of the Agriculture and Markets Law is that qualified applicants shall not be denied a license. Therefore, this court cannot conclude that section 258-c is a statute that has “ as its purpose the protection of the suitor as distinguished from the public ” as set forth by Judge Bbeitel in his dissent in Columbia Gas of N. Y. v. New York State Elec. & Gas Corp. (supra, p. 130), nor can this court conclude that the interest sought to be protected by Dairylea is *715 arguably within the zone of interest to be protected by the statute.
In the leading Federal cases under which the United States Supreme Court set forth this new zone of interest test, the statute in question provides: “ No bank service corporation may engage in any activity other than the performance of bank services for banks.” (U. S. Code, tit. 12, § 1864.) The United States Supreme Court held that the statute arguably brought the plaintiff competitor within the zone of interest protected by it when banks sought to enter the data services business and the travel business (Data Processing Serv. v. Camp, supra; Arnold Tours v. Gamp, supra). The Bank Service Corporations Act prohibited banks from going into any other business but banking and thus when banks sought and received permission to go into the data processing business and the travel business, those so engaged in those businesses were within the zone of interest protected by the statute.
This court cannot come to the same conclusion or rationale by examining section 258-c of the Agriculture and Markets Law. The petitioner does not come within the zone of interest protected by section 258-c of the Agriculture and Markets Law. On the contrary, the statute mandates and. directs the Commissioner of Agriculture and Markets to allow applicants to enter the field. For this reason, the petition must fail.
The petition is denied.