Wachtler, J.
This is a proceeding under CPLR article 78 to review a determination of the Commissioner of Agriculture and Markets granting the respondent Glen and Mohawk Milk Association’s application for an extension of its milk license to include a larger sales area. The facts are undisputed. Pe *9 titioner, Dairylea, is a licensed milk dealer authorized to sell milk in several counties of the State, including Rockland and Orange Counties. Respondent, Glen and Mohawk, is also a milk dealer licensed to sell milk in certain parts of New York State. Early in 1974, Glen and Mohawk applied to the Commissioner of Agriculture and Markets for an extension of its license to include all of Rockland County and the southern portion of Orange County. The commissioner granted Glen and Mohawk’s request without conducting a hearing as permitted by statute (Agriculture and Markets Law, § 258-c). Shortly thereafter, Dairylea commenced this proceeding. The trial court concluded that Dairylea was not arguably within the zone of interests to be protected by section 258 of the Agriculture and Markets Law and consequently lacked standing (79 Misc 2d 707). A divided court in the Appellate Division affirmed (48 AD2d 951).
Whether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which must be considered at the outset of any litigation. Under traditional theory a party had standing only where he established that his legal rights had been invaded (see, e.g., Tennessee Power Co. v TV A, 306 US 118). This approach, known as the "legal interest” test has recently been disavowed because it focuses on the issues to be litigated rather than on the party bringing suit (see Data Processing Serv. v Camp, 397 US 150; Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 28 NY2d 117; see, also, Matter of National Organization for Women v State Div. of Human Rights, 34 NY2d 416; New York State Bankers Assn. v Albright, 46 AD2d 269; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1; Boryszewski v Brydges, 37 NY2d 361). The "zone of interest” test was formulated to ascertain the petitioner’s status without necessarily dealing with the merits of the litigation. A petitioner need only show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute.
In the case before us, there is no issue as to the deleterious effect on Dairylea of the commissioner’s action; rather the dispute concerns the applicability and scope of the Agriculture and Markets Law. Dairylea contends that the statute is designed to regulate the milk producing industry by preventing practices which are unfair and destructive of competition *10 (Agriculture and Markets Law, § 258-c; Matter of Friendship Dairies v Du Mond, 284 App Div 147, 153). In its petition and supplemental petition Dairylea alleges that in approving the respondent’s application the commissioner failed to consider the effect which would tend to destructive competition in a market already adequately served. Having arguably come within the zone to be protected Dairylea asserts the right to challenge the commissioner’s action. The respondents argue that the petitioner has neither a statutory nor constitutional right to be heard in opposition to the application of a prospective competitor. Relying on the premise that the Legislature may confer or deny standing as it sees fit (Data Processing, supra, at p 154; Sierra Club v Morton, 405 US 727, 732, n 3) they note that the Agriculture and Markets Law was amended in 1950 (L 1950, ch 502, presently Agriculture and Markets Law, § 258-c) to limit specifically the requirement of notice and a hearing to an applicant or licensee who has been denied a license or renewal. Additionally they cite Matter of Dairymen’s League Co-op. Assn. v Du Mond (282 App Div 69, app dsmd 306 NY 595), for the proposition that a petitioner who was not a party to the license proceeding, either as of right or by consent of the agency, may not seek review of the commissioner’s determination pursuant to section 258-d of the Agriculture and Markets Law.
While it is clear that Dairylea may not challenge the commissioner on due process grounds (e.g., Hegeman Farms Corp. v Baldwin, 293 US 163, 170-171; Matter of Bank v Allen, 35 AD2d 245, 248) nor by specific statutory right since section 258-d refers solely to applicants and licensees (Agriculture and Markets Law, § 258-d; Matter of Sealtest Foods Div. of Nat. Dairy Prods. Corp. v Wickham, 33 AD2d 51) we do not believe that petitioner is barred from challenging the commissioner’s action. A fundamental tenet of our system of remedies is that when a government agency seeks to act in a manner adversely affecting a party, judicial review of that action may be had (see Jaffe, Judicial Control of Administrative Action, p 336; Davis, Unreviewable Administrative Action, 15 FRD 411). The increasing pervasiveness of administrative influence on daily life on both the State and Federal level necessitates a concomitant broadening of the category of persons entitled to a judicial determination as to the validity of proposed action. In recent years the right to challenge administrative action has been enlarged by our court. (See, e.g., Boryszewski v *11 Brydges, 37 NY2d 361, supra; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, supra; Matter of National Organization for Women v State Div. of Human Rights, 34 NY2d 416, supra; Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 28 NY2d 117, supra.)
In doing so, however, we have carefully examined the relevant statutes and precedents, ascertaining the presence or absence of a legislative intention to preclude review. Only where there is a clear legislative intent negating review (Long Is. Coll. Hosp. v Catherwood, 23 NY2d 20, 36, n 3; Matter of Guardian Life Ins. Co. v Bohlinger, 308 NY 174, 183) or lack of injury in fact (e.g., Matter of Sumpter v White Plains Housing Auth., 29 NY2d 420, cert den 406 US 928) will standing be denied.
We find no such legislative intent in the situation before us. Merely because Dairylea lacks the right to intervene in the underlying agency proceedings does not necessarily preclude judicial review (cf. Matter of Village of Pleasantville v Lisa’s Cocktail Lounge, 33 NY2d 618). The determinative factor is the specific incorporation into the statute of the objective of preventing destructive competition (Agriculture and Markets Law, § 258-c). As was noted in Matter of Friendship Dairies v Du Mond (284 App Div 147, 153, supra) "It is plain on the face of the statute that the purpose of the Legislature was an all-embracing one and that it was the intention of the Legislature to stabilize the entire distribution structure of the milk industry.”
Of course, competitive injury, of itself, will not confer standing (e.g., Matter of Bank v Allen, 35 AD2d 245, supra; Railroad Co. v Ellerman, 105 US 166; Perkins v Lukens Steel Co., 310 US 113). In the Allen case a committee representing pharmacy owners and operators was denied standing to oppose administrative action because the relevant statute did not require that economic competition be considered by the board in approving such an application. However, where a statute reflects an overriding legislative purpose to prevent destructive competition, an injured competitor has standing to require compliance with that statute (see Hardin v Kentucky Utilities Co., 390 US 1; cf. Marine Space Enclosures v Federal Mar. Comm., 420 F2d 577, 591). This is particularly true where, as here, the agency is authorized to act without any hearing whatsoever. To deny petitioner standing would invite *12 the subversion of the legislative goal of maintaining a healthy competitive atmosphere in the milk industry.
Having recognized Dairylea’s standing to challenge the commissioner’s action (CPLR 217), we note the limited scope of judicial scrutiny. The court reviewing such administrative action may consider only whether the agency exceeded its authority or disregarded the statutory standards (Matter of Guardian Life Ins. Co. v Bohlinger, 308 NY 174, supra). This review will be limited in a case such as this considering the fact that the commissioner must issue a license or extension unless he finds by a preponderance of evidence that the applicant is unqualified, or that the issuance will tend to a destructive competition or be contrary to the public interest (Agriculture and Markets Law, § 258-c; see, also, Governor’s Memorandum, approving L 1950, ch 502, 1950 NY Legis Annual 353). Despite the limited nature of the judicial review, we believe that the legislative objective will best be achieved where compliance with the statute may be scrutinized at the behest of an injured competitor.
Since we hold that Dairylea has standing, the case should be remitted to Special Term for consideration of the issues tendered on the merits.
Chief Judge Breitel (dissenting). The issue for the court is not whether in its judgment the regulation of the milk industry would be better served by granting standing to competitors of those to whom milk distribution licenses are granted. The issue instead is whether legislation of long standing in this State and of continued legislative interest in its content and effect contemplates the granting of such standing. Concededly, according to the majority, no constitutional right to standing is involved. Hence, the issue is to be determined solely by examination of the State legislation in question.
Prefatorily, the "zone of interest” doctrine developed in Data Processing Serv. v Camp (397 US 150, 156 [Douglas, J.]) concerned only Federal administrative regulation, the substantive statutes there applicable, and the Federal Administrative Procedure Act (see, also, Barlow v Collins, 397 US 159, 160, 165 [Douglas, J.]). None of this has necessary application to legislation in this State and certainly not to questions of standing to seek judicial review of administrative action, most often particularized in applicable substantive regulatory State statutes. Nor is it wise to impose on State regulatory statutes *13 so elastic a concept as the "zone of interest”, however necessary or desirable that may have been considered in the Federal field of administrative litigation. For one thing, there are multifold areas of State and local regulation, from public peanut vendors to giant utilities, whereas Federal regulation is largely confined to industries of great scope in the national economy. The indiscriminate application in State practice of a zone of interest doctrine to confer standing would not only result in potential masses of litigation, but worse, in rendering regulation by the State and its localities costly, protracted and eventually frustrative of the ends of regulation.
Looking to the case at hand, the Agriculture and Markets Law since 1950 has confined the right to notice, opportunity for a hearing, and judicial review to those denied licenses (§§ 258-c, 258-d). No provision for notice, opportunity for a hearing, or judicial review of the granting of a license exists with respect to competitors, suppliers, employees, independent contractors with the licensee, members of the public at large, or individual consumers of milk (see Agriculture and Markets Law, §§ 258-c, 258-d).
Indeed, practice prior to the enactment of the present section 258-c was to allow competitors to seek judicial review of the issuance of a license under section 258-d (see Matter of Dairymen’s League Co-op. Assn. v Du Mond, 282 App Div 69, 71-72, app dsmd 306 NY 595; Matter of Bullis v Du Mond, 274 App Div 951, 276 App Div 882, 883). This was because former section 258-c provided no particular procedure for the commissioner to follow in determining whether an applicant was a qualified person, whether the issuance of a license would not tend to produce destructive competition, and whether the issuance of the license was in the public interest. Thus, the commissioner in his discretion notified competitors of a license application and permitted them to participate in the proceedings. Once this was done, judicial review upon request of competitors in fairness was required. With the passage of section 258-c as it now reads, however, the procedural limits were marked out and only the applicant was thereafter entitled to receive notice and an opportunity for a hearing before denial of its application (L 1950, ch 502; see Matter of Dairymen’s League Co-op. Assn. v Du Mond, 282 App Div 69, 72, app dsmd 306 NY 595, supra). Of course, judicial review under section 258-d could, arguably, be unaffected by the 1950 restructuring of section 258-c. However, it would be incongruous *14 that a competitor, eliminated from participation in the commission proceedings, would still by virtue of an "omission”, which could hardly be inadvertent, be able to seek judicial review of the commission’s determination (cf. Matter of Village of Pleasantville v Lisa’s Cocktail Lounge, 33 NY2d 618, 619, involving not a competitor but a village authorized by law to seek judicial review, although not entitled to intervene at the administrative level).
Moreover, for many years the courts have so construed the statute, most explicitly and elaborately in the opinion by the late Mr. Justice Halpern in the landmark case of Matter of Dairymen’s League Co-op. Assn. v Du Mond (282 App Div 69, app dsmd 306 NY 595, supra). In the interim, the statute has never been changed although it is a matter of public record that the Legislature has for more than half of this century maintained a close and critical surveillance of the State’s milk control law, its judicial interpretation, and its economic effect, as is true in all of the dairy States in the Nation (see, e.g., Agriculture and Markets Law, § 258-n, authorizing interstate and Federal compacts).
Even if the foregoing were not true, in order to find standing in petitioner competitor to resist the granting or expansion of a license, one should look to the governing statute and not add the gloss of an elastic, if not a virtually unlimited, concept adopted for Federal regulatory purposes with particular Federal statutes in mind.
The Legislature may provide that certain administrative action is not open to general judicial review (Matter of Guardian Life Ins. Co. v Bohlinger, 308 NY 174, 180; cf. Data Processing Serv. v Camp, 397 US 150, 154, supra). The intent of the Legislature is controlling (see Matter of Guardian Life Ins. Co. v Bohlinger, supra, at pp 180-181; cf. Data Processing Serv. v Camp, supra, at p 156). Thus, it is useful to examine other State regulatory statutes to see how the Legislature has conferred standing without express limitation to obtain judicial review of the granting of licenses, when it has chosen to do so (see Alcoholic Beverage Control Law, §§ 121, subds 2, 3; 123; Matter of Forman v New York State Liq. Auth., 17 NY2d 224, 229; General Business Law, § 79, subd 6; Insurance Law, § 123, subd 20; Real Property Law, § 441-f; Town Law, § 137; Vehicle and Traffic Law, § 415, subd 9; cf. General Business Law, §§ 174, 189, subd 4). But it has long been the view that, in the case of milk control, the Legislature has neither chosen *15 nor intended to confer standing on competitors (see Matter of Dairymen’s League Co-op. Assn. v Du Mond, 282 App Div 69, 75, app dsmd 306 NY 595, supra).
The Legislature has in so many areas of regulation particularized the right of judicial review to those denied licenses and not to competitors who feel dissatisfied by the granting of licenses (e.g., Agriculture and Markets Law, §§ 142-ee, 147-g, 232, 251-f, 251-n, 251-v, 251-Z-6, 258-d; Banking Law, §§ 348, 373, 496, 559, subd 6; Education Law, §§ 124, 6510, subd 4; General Business Law, §§ 390-c, 411, 443; Public Health Law, § 3450, subd 3; Real Property Law, §§ 444-a, subd 5; L 1962, ch 311, § 30). The omission cannot be inadvertent. But more important, the spill-over of the rule in this case would, inevitably, under the questionable banner of the "zone of interest” doctrine, conceived and developed in another jurisprudence, extend to these variegated fields, large and small, with untold regulatory and administrative consequences.
Indeed, it is paradoxical that the court should reach out to grant standing to competitors whose purpose, of course, is to limit competition and not to benefit the consuming public, a public which has no standing because the Commissioner of Agriculture and Markets is entrusted with the care of public interest (Agriculture and Markets Law, §§ 258-k, 258-p, 258-s; see Matter of Dairymen’s League Co-op. Assn. v Du Mond, 282 App Div 69, 75, app dsmd 306 NY 595, supra). Indeed, the words in the 1973 enactment of the Dairy Promotion Act are pointedly relevant to the issue in this case. There it was stated: "the interest is to preserve and foster competition in the assembly, processing and distribution of milk and milk products but without intent to preserve the competitive status quo of individual farms or markets” (Agriculture and Markets Law, § 258-s, as added by L 1973, ch 831).
On this analysis the holding by this court in Columbia Gas of N. Y. v New York State Elec. & Gas Corp. (28 NY2d 117), in which as part of its rationale, the court referred to the zone of interest doctrine, is neither controlling nor even helpful.* A different regulatory scheme and a different kind of regulatory statute was involved, and at the very least, the competition by the electric utility arguably undermined the regulation of the gas utility. Moreover, the regulatory commission had rejected *16 the rate schedules proposed by the electric utility to accomplish its competitive purpose, suggesting to some, perhaps, that the rejection was for the benefit of the gas utility (see 28 NY2d 117, at pp 123, 126, supra). Not insignificant too is that the universe of utility competitors is a small one indeed.
The pity of it is that the very limited judicial review that the majority would allow in this case under the narrow rule of Matter of Guardian Life Ins. Co. v Bohlinger (308 NY 174, supra) would not help a competitor like Dairylea. The most serious problem, however, presented by the court’s resolution of this case, as already indicated, is the potential proliferation of a zone of interest analysis, without the benefit or blessing of legislative action, to other, if not all, regulatory schemes in the State, and strangely enough, in behalf of competitors whose primary, if not exclusive, interest is in preserving their freedom from greater competition rather than to expand the benefits of competition to the consuming public. This, indeed, is to find it necessary to set the fox to watch the chickens.
The remedy devised by the court is obscure, gives no guidance to Special Term, or to the commissioner, if perchance the matter should be eventually remanded to him. It offers no rules or principles to define the scope of review. Most important, the rule in the Guardian Life case (supra), relied upon by the majority, was related to determinations expressly excluded by statute from judicial review at the behest of anyone, including, if not especially, the regulated entity. It has no recognizable relation to an issue of standing in third parties to litigate. Nor is any guidance provided by cases involving the standing of taxpayers, concerned citizenry, and organizations embracing community interests in preventing unconstitutional or illegal action by governmental agencies affecting the public fisc or recognized property interests. Only confusion is engendered by failing to distinguish the different meanings and applications of the concept of "standing”.
In contrast consider what this court said in the Guardian Life case (supra, at p 183):
"That is not to say, however, that there is to be no judicial scrutiny whatsoever. Even where judicial review is proscribed by statute, the courts have the power and the duty to make certain that the administrative official has not acted in excess of the grant of authority given him by statute or in disregard of the standard prescribed by the legislature. (Cf. Matter of Barry v. O’Connell, 303 N. Y. 46, 52; People ex rel. Metropoli *17 tan Life Ins. Co. v. Hotchkiss, 136 App. Div. 150.) So, here, for instance, the courts will decide whether or not the Superintendent, in reaching his conclusion, employed the standard fixed by the statute, namely, whether the property purchased by Guardian was or was not 'requisite for its convenient accommodation in the transaction of its business.’ There can be no doubt here that the Superintendent did make his determination solely with that standard in mind. Not only did he explicitly state that Guardian’s present New York City quarters 'are [not] inadequate for the convenient transaction of its business,’ but he made findings necessarily leading to the conclusion that the purchase was not required for the convenient accommodation of the company’s business.
"The fear has been expressed that absence of judicial review may encourage abuse of administrative power by the Superintendent of Insurance. If there is any basis for that fear, it is a consideration to be addressed to the legislature whence came the provision proscribing appeal in this sort of case.”
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Judges Gabrielli, Jones, Fuchsberg and Cooke concur with Judge Wachtler; Chief Judge Breitel dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, with costs, and matter remitted to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein.

 This is the only case in which the Court of Appeals has ever mentioned or been concerned with the so-called "zone of interest” doctrine.