OPINION OF THE COURT
Con. G. Cholakis, J.
Each of the petitioners in this proceeding owns real prop *1059 erty in the City of Troy, New York, which is located within Residence Zone No. 3 (R-3) as established by the city’s zoning ordinance. Associated Residental Centers, Inc. (Residental), a nonparty to this proceeding, owns property located adjacent to, across the street from, or in close proximity to the various properties owned by the petitioners.
Residental, a charitable corporation organized to acquire, mortgage and lease real property, has as one of its primary purposes, the leasing of property to the Rensselaer County Chapter of the New York State Association for Retarded Children, Inc. (ARC), herein erroneously sued as Rensselaer County Association for Retarded Children, Inc.
ARC appears to be authorized to operate community residential facilities for the mentally disabled (Mental Hygiene Law, art 41) and, pursuant to such authority, filed an application on November 8, 1978 with the City of Troy, New York, for a permit to alter the premises owned by Residental. The sought after work permit was issued to ARC on December 27, 1978 and petitioners seek its revocation in this proceeding.
Section 41.34 of the Mental Hygiene Law was enacted into law and became effective on September 1, 1978. That section now controls the procedures which must be followed if an organization, such as ARC, seeks to operate a hostel for the mentally retarded.
ARC alleges, and it is not disputed, that it properly followed the procedures set forth in section 41.34 of the Mental Hygiene Law.
Section 4 of chapter 468 of the Laws of 1978, in referring to said new section, reads as follows: "This act shall take effect on September first, nineteen hundred seventy-eight, provided, however, it shall not apply to community residences for which, in the judgment of the commissioner, sites were selected prior to the effective date of this act” (emphasis supplied).
Commissioner Coughlin (one of the respondents herein), by letter dated December 19, 1978, advised the Honorable Donald Bowes, Troy’s Corporation Counsel, that, in his opinion, the community residence herein involved had not been chosen prior to the effective date of section 41.34. Based upon this opinion, the contested work permit was issued.
Petitioners attack Commissioner Coughlin’s determination and respondents Coughlin and ARC allege that they have no *1060 standing to do so in that they do not allege that the site selection will cause them any injury.
In order to seek review of any agency determination, a petitioner must have standing to do so. The courts have consistently allowed review when a petitioner will suffer some injury by such a determination and he is not specifically excluded, by legislation, from such a review (Matter of Dairy-lea Coop, v Walkley, 38 NY2d 6).
The court finds no legislative intent negating review of the commissioner’s decision by persons in petitioners’ position. The second prong of the test, injury to petitioners, is more difficult to determine.
While the petition is not specific in its allegations concerning damage, the court understands its allegations to imply that the petitioners will be injured by the commissioner’s decision. This was expanded upon at oral argument and by petitioners’ brief.
The court does not feel that its determination should turn upon an inartfully drawn petition and therefore finds that petitioners have standing to bring this proceeding.
Once having determined the question of standing, we must determine the scope of review. The court is without authority to set aside the commissioner’s determination unless it was without sound basis in reason and was taken without regard to the facts. Another way of stating the scope of review is that the commissioner’s determination cannot be set aside if there was a rational basis for it (Matter of Pell v Board of Educ., 34 NY2d 222).
The chronology of events which led up to the questioned determination, and of which the commissioner was aware, included the following: (1) ARC commenced a search for a suitable location to create a hostel. (2) ARC concluded that the premises herein involved fulfilled its requirements. (3) ARC entered into a contract to purchase the property. (4) ARC filed an application for a site plan review with Troy’s Planning Commission and also filed an application for a special use permit with the zoning board. (5) ARC thereafter requested permission to withdraw its application before the Planning Commission because it had decided that there was not need to follow that procedure. ARC’s request was denied. (6) The Planning Commission thereafter rejected ARC’s site plan for its failure to supply certain requested information. (7) ARC *1061 informed the prospective sellers of the property that it was willing to release them from their contract.
All of the above steps were taken prior to September 1, 1978, the effective date of section 41.34 of the Mental Hygiene Law. Subsequent to the effective date of the new law, ARC appealed the Planning Commission’s rejection of its site plan.
Commissioner Coughlin’s determination seems to be based, in large measure, upon ARC’S application having been rejected by Troy’s Planning Commission and ARC having released the owners of the property before September 1, 1978 thereby terminating ARC’s selection process before the effective date of the new law. Therefore a second selection of the same site after September 1, 1978 would come under the new law.
While the court is aware that it must give great weight to a statute’s interpretation by the concerned agency (Filardo v Foley Bros., 181 Misc 136; McKinney’s Cons Laws of NY, Book 1, Statutes, § 129), it cannot agree with the commissioner’s decision.
Each of the provisions of the new statute refers to the selection process to be undertaken by a sponsoring agency. That term is defined in section 41.34 (subd [a], par [2]) of the Mental Hygiene Law. " 'Sponsoring agency’ means an agency or unit of government, a voluntary agency or any other person or organization which intends to establish or operate a community residential facility for the disabled” (emphasis supplied).
It is clear that ARC comes within that definition and it is also clear that the intent of the law is to provide the machinery by which an agency can ultimately use property which it had not selected for use prior to September 1, 1978.
This court does not read the law as giving a sponsoring agency a second vehicle to obtain approval when it had already failed in its first attempt. To do so would belie the purpose of the legislation as set forth by the Legislature. "It is further intended that that communication and cooperation between the various state agencies, local agencies and local communities be fostered by this legislation, and that this will be best achieved by establishment of clearly deñned procedures for the selection of locations for community residences, to best protect the interests of the mentally disabled and ensure acceptance of community residences by local communities.” (L 1978, ch 468, § 1; emphasis supplied.)
*1062 To apply the commissioner’s interpretation to this statute would defeat the very intent which the Legislature had in passing it into law.
The court therefore finds that the commissioner’s decision had no rational basis and as a result was arbitrary and must be set aside. The court finds that insofar as the issuance of the work permit was based on the commissioner’s decision, it too was improper and orders it rescinded.