*208 OPINION OF THE COURT
George G. Inglehart, J.
This CPLR article 78 proceeding is brought to compel the Department of Environmental Conservation (DEC) to issue a mining permit to the petitioner, a domestic corporation engaged in the landfill business.
DEC maintains that it cannot issue a mining permit until an Environmental Impact Statement (EIS) is filed. The preparation and filing of an EIS in itself is a major and costly project which petitioner seeks to avoid.
Petitioner has made an agreement to remove for use as landfill approximately 220,000 cubic yards of coarse gravel, silt and glacial till from a small drumlin in the Town of Geddes, Onondaga County. The drumlin belongs to a Charles Realty. According to the allegations of the petition, Charles Realty’s long-range plan is to make a residential development on the site after the material has been removed. Petitioner is not otherwise connected to or involved with Charles Realty. No monetary consideration is to be made for the removal of the fill, which Charles Realty wants to dispose of. Charles Realty is not made a party to this motion.
Petitioner has retained engineers and consultants and has prepared a plan to remove the drumlin material over a three-year period, to grade and contour the land and to reseed. Because of the nature of the terrain, the removal of the drumlin, or a good part of it, would be prerequisite to any future residential development by Charles Realty or anyone else.
There is little doubt that the petitioner’s proposed plan would enhance the value of the land and its aesthetic appearance. The land is now a mound of approximately 130 feet in height, vacant, unattractive, nonsupporting of vegetation except scrub.
Petitioner has become enmeshed in oppressive red tape. In order to talk to DEC it is necessary first to learn the department’s code words and language. In requesting a mining permit from DEC, petitioner was first required to file an Environmental Assessment Form (EAF). This put into motion a review by DEC’S resident Mined Land Reclama *209 tian Specialist (Joseph S. Moskiewicz) who consulted with other resident experts and who received a memorandum from the Environmental Analysis Unit (EAU). As a result of his review, Mr. Moskiewicz has made a “positive declaration” in which he found that petitioner’s project might have a “significant effect” upon the environment. The finding of “significant effect”, or the use of these magic words, put the matter within the scope of the State Environmental Quality Review Act (SEQRA) which in turn necessitates the filing of a Draft Environmental Impact Statement (DEIS), which is the very anathema petitioner wishes to avoid.
The criteria by which the finding of “significant effect” was made are found in 6 NYCRR 617.11. It is noted that these rules are established and promulgated not by the Legislature but by DEC itself under authority given by SEQRA.
Thus DEC reaches its present position of maintaining that this CPLR article 78 proceeding is premature and invalid because DEC is barred by its own rules from issuing a mining permit until a DEIS has been filed. It has therefore, it says, not denied a permit or made any determination regarding a permit, or failed to do any act enjoined upon it by law.
This specious reasoning is totally without merit. It was DEC’s “positive declaration” and finding of “significant effect”, both self-imposed criteria, which activated the SEQRA requirement of a DEIS. Thus it is the finding of “significant effect” that is the real subject of this proceeding.
The court is aware of established principles of administrative actions and judicial review, and will not normally substitute its judgment for legitimate expert agency determinations. But where such determinations are founded upon arbitrary and capricious criteria, it is not precluded from so doing.
The Court of Appeals, in Matter of Dairylea Co-op. v Walkley (38 NY2d 6), addressed the issue of public access to the courts to redress grievances with administrative findings and procedures. It held that when government agency actions adversely affect a party, judicial review may be had, *210 and further noted that with the increased, almost pervasive presence of administrative regulation, increased access to the courts is desirable. To permit DEC or any other agency to make arbitrary findings which by themselves have major substantive effects on the rights of individuals without the opportunity for court review is inimical to a free society.
The specific criteria by which DEC has made its determination are recited by its notice to petitioner dated September 25,1979:
“The possible significant environmental effects are:
“a. A substantial increase in the potential for erosion, flooding and drainage problems.
“b. The creation of a material conflict with a community’s existing plans or goals as officially approved or adopted.
“c. The impairment of the character or quality of aesthetic resources and existing community and neighborhood character.
“d. A substantial change in the use, or intensity of use of land and in its capacity to support existing uses.
“e. The creation of a material demand for other actions which may have a significant effect on the environment.”
None of these items are valid if applied solely to the application for a mining permit to remove or reduce the drumlin:
1. Removal or reduction of the drumlin would obviously alleviate erosion, flooding and drainage problems.
2. There would be no conflict with existing community plans. The land is now zoned residential “A”.
3. The aesthetic quality of the land would be improved, not impaired, by petitioner’s plan to remove the unsightly mass of till and to landscape and reseed.
4. The land is not now used for anything, and is not likely to be with the drumlin there.
5. No material demand for other action would be created.
However, the crux of the DEC’S determination of “significant effect” apparently lies in the proposed residential development by Charles Realty after the drumlin has been reduced. Such a development would fall within some of the criteria listed above. It would also become the object of con *211 cern by some of the other governmental agencies cited by DEC in its brief as approving the DEIS, which other agencies are not concerned with the drumlin removal project by itself.
DEC now invokes 6 NYCRR 617.11 (b) of its own rules, which provides:
“(b) For the purpose of determining whether an action will cause one of the foregoing consequences, the action shall be deemed to include other simultaneous or subsequent actions which are:
“ (1) included in any long-range plan of which the action under consideration is a part;
“ (2) likely to be undertaken as a result thereof; or
“(3) dependent thereon.”
Subdivision (b) of 6 NYCRR 617.2 also defines the scope of an “action” when the issuance of a permit is involved, stating: “In the case of a project or activity involving funding or a permit from an agency, the entire project shall be considered an action, regardless of whether such funding or permit relates to the project as a whole or to a portion or component of it.”
By these standards (6 NYCRR 617.11 [b]) DEC brings petitioner within the scope of SEQRA and to the requirement for DEIS. There is no doubt that Charles Realty’s long-range residential development plan is dependent upon the removal of the drumlin. Mr. Moskiewicz’ finding of “significant effect” is not, therefore, an arbitrary abuse of his authority, since he is acting within the rules established by his employer.
What is an arbitrary abuse of authority is the DEC’S very promulgation of these rules. Section 617.11(b) of title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York is a self-serving extension of DEC’S authority, in this case to a projected future project not within the scope of the mining permit.
Neither is it within the precise authority given to DEC by the legislative enactment of SEQRA. DEC has, in effect, lifted itself by its own bootstraps.
Charles Realty’s plans for the future will be dealt with *212 when and if the time comes by DEC and other interested agencies. They should not be used to invoke unnecessary and oppressive control over petitioner’s relatively simple request for a mining permit.
The court finds that DEC is arbitrarily abusing its authority in this case, and that it may be ordered to issue the mining permit requested by petitioner.