OPINION OF THE COURT
Eugene M. Fahey, J.
Petitioners, Main Seneca Corporation, Huron Group, Inc. and Violet Realty, Inc. (Main Seneca), are owners of a commercial office building in the City of Buffalo. They commence this CPLR article 78 proceeding alleging that a September 11, 2002 determination of respondent Erie County Industrial Development Agency (ECIDA) violated the general purposes provisions of General Municipal Law § 858 and the antipirating provisions of General Municipal Law § 862. In that determination, respondent ECIDA authorized the acquisition of real property and construction of a facility in the Town of Tonawanda to be occupied by respondent John W. Danforth Company.
Petitioners Main Seneca now move for summary judgment on the matter annulling the September 11 determination, while respondents ECIDA, Danforth and Blue Angels cross-move to dismiss the petition.
Petitioner Main Seneca’s motion for summary judgment is denied. Respondents ECIDA, Danforth and Blue Angel’s cross motion to dismiss the petition is granted.
Facts
Respondent, John W. Danforth Company, is a general contracting firm for large mechanical systems with long-term ties to the Buffalo area. Prior to the Thanksgiving snowstorm of November 2000, Danforth was headquartered at 1940 Fillmore Avenue, with a majority of employees housed at that location, including administrative personnel, the service company, and its estimators.
*166 The heavy snowfall of the storm caused the collapse of the roof of the main administration building. The building was later demolished and Danforth employees were temporarily relocated to three separate Buffalo addresses and to office trailers at 1940 Fillmore.
The court has reviewed the affidavits of Danforth corporate officers Emmett, Patrick, and Kevin Reilly, stating that the size of the Fillmore location presented Danforth with a number of practical difficulties prior to the storm, so that Danforth was subcontracting some of its work to Michigan, Kansas, and Tennessee rather than performing the work in western New York.
Kevin Reilly has also testified that to remain competitive in the industry, they needed to stop contracting the work and that on January 25, 2001, Danforth representatives met with Paul R. Leone, the ECIDA’s director of business development, and Dan Berry, executive vice-president of the Buffalo Economic Renaissance Corporation (BERC), to explore obtaining financial assistance to either rebuild on Fillmore or build on an alternate site.
Patrick Reilly has also testified that Danforth sought out a number of potential Buffalo sites, but that all presented substantial difficulties, and that Danforth eventually began discussions with Ciminelli Development Corporation concerning a new facility in Tonawanda.
By letter dated May 10, 2002 to the ECIDA’s Leone, Dan Berry of Buffalo Economic Renaissance Corporation wrote that BERC had attempted to find a suitable Buffalo location and that it was clear Danforth preferred a city location (exhibit B, record).
On June 27, 2002, Danforth submitted an eligibility questionnaire to the ECIDA for financing, maintaining that the project was necessary to “help reduce operating costs and allow Dan-forth to [compete] for work in the Northeastern States” (exhibit C, record, at 10).
The minutes of the ECIDA meeting of September 11, 2002 in regard to the determination read in their entirety:
“Mr. Kerchoff then presented the following combined inducement and bond sale resolutions to the Board.
“blue angels properties llc/john w. danforth company proposes the acquisition of 6.29+ acres of land and construction of a 61,294+ square foot building and the acquisition and installation of *167 machinery and equipment for the Company’s facility to be located at 2122 Colvin Boulevard, Tonawanda, New York. The project log sets forth the project justification, as well as the projected tax effects of the project. Mr. Kerchoff indicated that no individuals attended the public hearing with respect to this project. Mr. Kerchoff stated that a negative declaration has been adopted for this project by the Town of Tonawanda. Authorization is also sought for the sale of the Agency’s bonds in an amount not to exceed $4,653,146.00, at a rate, term and amortization period and to a bond purchaser to be determined, along with authorization for collateral mortgages in connection therewith. Mr. Doherty commented that it was good to see this company stay in Buffalo. In response to a question by Dr. Rudnick, Mr. Kucharski stated that the City did sign off on the relocation. Upon motion made by Mr. Giambra, seconded by Dr. Rudnick, and unanimously carried it was:
“resolved, that the Agency adopt a combined inducement and bond sale resolution in favor [of] Blue Angels Properties LLC/John W. Danforth Company, all as more particularly described in a true copy of the resolutions annexed to the minutes of this meeting and made a part hereof’ (exhibit D, record; emphasis added).
The court notes further the affidavits of Paul Leone and Thomas A. Kucharski, president of respondent EGIDA, which indicated that they were fully aware of respondent Danforth’s competitive difficulties before the September meeting, and that a new facility needed to be developed as quickly as possible, or Danforth might build a facility in Tennessee.
Standing
Petitioners in paragraph 17 outline their claim for standing “as owners, landlords, taxpayer all located within the County of Erie and State of New York * * * entitled to the rights, privileges and opportunities provided by Section 862 (1) of the General Municipal Law.”
Petitioners argue that they have standing because their position is analogous to their position in Matter of Main Seneca Corp. v Town of Amherst Indus. Dev. Agency (248 AD2d 930 [4th Dept 1998] [Amherst IDA]).
In Amherst IDA (supra), the lower court determined that there was standing based on petitioner’s status as commercial *168 building owners in Buffalo in competition with one of the respondents, Uniland Partnership, L.P., which had secured financing from the Amherst IDA for construction of an office building in Amherst.
It is uncontested that petitioner Main Seneca here made offers of certain properties to Danforth (see Hurwitz & Fine mem of law at 11). As such, at least to some degree, they are competitors with the sponsors of the proposed project, just as they were in the Amherst IDA case (supra).
In Matter of Dairylea Coop. v Walkley (38 NY2d 6 [1975]), the classic Court of Appeals case in this area, the Court stated that “where a statute reflects an overriding legislative purpose to prevent destructive competition, an injured competitor has standing to require compliance with that statute” (Dairylea, supra at 11).
Given the purpose of General Municipal Law § 862 (1), “the antipirating provision” described below, the court cannot escape the conclusion that to follow Dairylea, it must afford the petitioners standing.
The Substantial Issues
Section 862 (1) reads:
“No financial assistance of the agency shall be used in respect of any project if the completion thereof would result in the removal of a facility or plant of the project occupant from one area of the state to another area of the state or in the abandonment of one or more plants or facilities of the project occupant located within the state, provided, however, that neither restriction shall apply if the agency shall determine on the basis of the application before it that the project is reasonably necessary to discourage the project occupant from removing such other plant or facility to a location outside the state or is reasonably necessary to preserve the competitive position of the project occupant in its respective industry.”
There are only two reported cases interpreting section 862 (1), Matter of Northeast Parent & Child Socy. v City of Schenectady Indus. Dev. Agency (114 AD2d 741 [3d Dept 1985]), cited by respondents, and the Amherst IDA case (supra), cited by petitioner.
The court finds each case distinguishable from our own.
Northeast (supra at 742) involved the City of Schenectady IDA’s approval of a relocation inside that municipality. The *169 Third Department noted that the purpose of section 862 (1) was to prevent municipalities from pirating each other’s industries “from one area of the state to another,” and that the statute was not contravened.
Respondents invoke Northeast (supra) contending that the ECIDA approval of a relocation inside Erie County is not from one area of the state to another, even if it is from the City of Buffalo to the Town of Tonawanda, because the County encompasses both areas.
But there is nothing in Northeast (supra) for so expansive an interpretation. Northeast (supra) took “area” to mean “municipality.” If “area” should be defined as “municipality,” then section 862 (1) applies to a relocation from Buffalo to Tonawanda.
In Main Seneca v Amherst IDA (supra), concluding that the Amherst IDA violated section 862 (1), the Fourth Department found that the tenant there, an accounting firm leasing office space in the Statler Towers in Buffalo, which had accepted an Amherst IDA sublease of an office building in Amherst, had moved from “one area of the state to another” within the term of section 862 (1).
The Fourth Department (at 931) rejected the lower court’s reasoning that an “area” should be defined as “area of economic impact,” and concluded that “area” was “akin to a ‘municipality.’ ” Thus section 862 (1) applied.
The Court further found that neither of the exceptions in section 862 (1) were applicable. Nothing in the record showed that, absent approval of the sublease, the accounting firm might move out of state or that the firm needed the move to maintain its competitive position in the industry. Rather, the Court found the accounting firm sought the move solely for the convenience of its customers and employees, which meant that the Amherst IDA had violated section 862 (1).
Here the facts are different. The “competitive necessity” exception to section 862 (1) does apply.
Respondent Danforth’s situation is distinguishable from the accounting firm’s. Its facility had been wrecked by a snowstorm. Its claim is that the damage to the facility led it to determine that it needed to relocate to a larger facility to remain competitive. It then sought an appropriate Buffalo location, but could not find one. It articulated its need to remain competitive in its application to the ECIDA.
*170 The City of Buffalo also acted differently. Instead of opposing the move, as it did in Amherst IDA (supra), it supported relocation.
Respondent ECIDA had all of these elements before it as it weighed the question of authorizing the acquisition.
It is not the place of the court to substitute its judgment for the agency’s. The test is whether the agency demonstrates it had a rational basis for its determination (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).
Conversely, “[arbitrary action is without sound basis in reason and is generally taken without regard to the facts” (Pell, supra at 231).
On this record, the court is satisfied that there is an effective showing that respondent Danforth’s move was reasonably necessary to preserve its competitive position in the industry and that respondent ECIDA had a rational basis for its decision, and did not act arbitrarily, when it authorized the acquisition. There is no violation of section 862 (1) here.
The petition is dismissed.