Cooke, J. (dissenting).
Petitioners include the Borough President of The Bronx, a State Senator, a New York City Councilman, the copresidents of a parents association of a public school and an environmental group. Except for the last mentioned, they bring this article 78 proceeding individually and under their respective official titles. Respondents are the New York City Transit Authority (hereinafter "NYCTA”) and the members thereof.
The petition asserts seven "causes of action”, the last of which relates to the Metropolitan Transportation Authority. Originally also named as respondents were the Metropolitan Transportation Authority and its members, but the notice of appeal to this court indicates that an appeal is not taken from that part of the Appellate Division order which affirmed dismissal of the proceeding against said authority.
In the first "cause”, it is alleged that the public rapid transit rail facility in the counties of the Bronx, Queens, New York and Kings within the City of New York, commonly known as the subway, is operated by NYCTA in violation of section 3.01 of the New York City Noise Control Code (Administrative Code, § 1403.3-3.01). Said section reads: "No person shall make, continue or cause or permit to be made or continued any unnecessary noise.” "Unnecessary noise”, as defined in subdivision 22 of section 1.05 of the New York City Noise Control Code (Administrative Code, § 1403.3-1.05, subd [zz]), means "any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace, or safety of a person, or which causes injury to plant or animal life, or damage to property or business.” It is also asserted in substance and among other things: that said subway emits excessive and unusually loud noise; that the intensity of said noise exceeds that of comparable systems by more than 10 times; that although a 1931 report found the "tremendous intensity” of said noise to be unhealthy, the subway now emits higher levels of noise than in 1931; that the noise inside a train cruising in a tunnel and on station platforms ranges from 95 to 105 dBA and often reaches levels over 115 dBA; that the subway exposes its *994 riders and employees to noise levels in excess of those established by Federal and State authorities for the protection of workers; that the subway has about 240 route miles, above and below grade, served by about 720 miles of tracks, 480 stations and 7,000 cars; that it carries 3.9 million paying passengers each business day; that each rider is exposed to subway noise upon entering and leaving the station, waiting on station platforms and riding trains; that such noise induces temporary hearing loss in a substantial portion of riders and can induce permanent hearing loss after years of subway commuting; that such noise exposure also causes other physiological risks through activation of pituitary-adrenocortical stress response; that such exposure causes psychological stress, the symptoms of which include headaches, fatigue, nervousness, anxiety and social conflicts; that such exposure disturbs the comfort of the average person and interferes with speech; that there are adverse effects on the hearing and health of about 30,000 operating employees of the subway; that the eastern face of P. S. 98 looks onto an elevated subway track and that passing trains cause such loud and excessive noise within the classrooms near the eastern side of the building that instruction must cease, such interruptions taking place every four and a half minutes and occupying 11% of the school day; that numerous residences, places of work and public areas near above-grade and above below-grade sections are exposed to subway noise and vibration which interfere with sleep and speech, deteriorate buildings, crack plaster and result in use of automobiles in contravention of the New York State Air Implementation Plan—Transportation Controls; and that various economical methods exist to lessen subway noise, same being employed widely elsewhere by other mass transit systems.
The second "cause” alleges that NYCTA is subject to Part 49 of the Industrial Code (12 NYCRR Part 42) and that said subway is operated in a manner which causes exposure above the permissible limits of section 49.6 of the Industrial Code. Subdivision (d) of said section (12 NYCRR 49.6 [d]) provides that "[ejxposure of the ear to continuous noise shall not exceed 115 dBA”. It also sets forth a table of permissible exposures to continuous noise, one item of which is a duration of Vk hour or less per day for a sound level of 115 dBA.
The third "cause” charges an operation and maintenance of the subway in a manner causing noise and vibration so as to *995 fail to provide reasonable and adequate protection to persons employed in or frequenting the subway in violation of subdivision 1 of section 200 of the Labor Law. Said subdivision provides: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section.”
The fourth "cause” alleges the maintenance of a public nuisance based on the unreasonable level of subway noise and the substantial interference with rights more specifically alleged. The fifth asserts that the maintenance of the nuisance is due to the negligence of respondents and their failure to take measures to prevent the excessive noise and vibration, without contributory negligence on the part of petitioners.
The sixth "cause” alleges that petitioner Abrams, as a member of the Board of Estimate, has never received the systematic information about the NYCTA as required by sections 1213 and 2500 of the Public Authorities Law.
Briefly, and as now pertains to respondents NYCTA and the members thereof, the petition asks for a judgment: that the existing levels of subway noise be declared as "unnecessary noise” under section 3.01 of the New York City Noise Control Code and as a public nuisance and that NYCTA be directed to eliminate exposure of persons to subway noise in excess of 85 dBA; that NYCTA be ordered to submit within 90 days a plan to reduce maximum levels of subway noise to 85 dBA in as few years as feasible; that NYCTA be directed to deliver to petitioner Abrams the documents required under the Public Authorities Law and that it include in its annexed report detailed information on the implementation of the above noise control plan; and that, in the interim, NYCTA be ordered to perform certain specified inspections, repairs, installations and treatments upon the subway system.
Before service of an answer, respondents filed the affidavit of the General Counsel of NYCTA in opposition and in which dismissal was urged. Special Term dismissed the petition for lack of standing and failure to state a cause of action. The Appellate Division affirmed the dismissal, the majority indi *996 eating in its opinion that petitioners did not have standing to sue and that petitioner Abrams was not entitled to additional reports.
Recent decisions of this court have revealed a broadening of the concept of standing by recognizing a growing class of parties properly able to maintain actions and proceedings alleging grievances against public officials and their acts (Matter of Dairylea Coop, v Walkley, 38 NY2d 6; Boryszewski v Brydges, 37 NY2d 361; Matter of Douglaston Civic Assn., v Galvin, 36 NY2d 1). In Dairylea (supra) this court went so far as to assert at pages 10-11:
"A fundamental tenet of our system of remedies is that when a government agency seeks to act in a manner adversely affecting a party, judicial review of that action may be had (see Jaffe, Judicial Control of Administrative Action, p 336; Davis, Unreviewable Administrative Action, 15 FRD 411). The increasing pervasiveness of administrative influence on daily life on both the State and Federal level necessitates a concomitant broadening of the category of persons entitled to a judicial determination as to the validity of proposed action. In recent years the right to challenge administrative action has been enlarged by our court. * * *
"In doing so, however, we have carefully examined the relevant statutes and precedents, ascertaining the presence or absence of a legislative intention to preclude review. Only where there is a clear legislative intent negating review (Long Is. Coll. Hosp. v Catherwood, 23 NY2d 20, 36, n 3; Matter of Guardian Life Ins. Co. v Bohlinger, 308 NY 174, 183) or lack of injury in fact (e.g., Matter of Sumpter v White Plains Housing Auth., 29 NY2d 420, cert den 406 US 928) will standing be denied.”
Under this view, as the majority points out, "it may no longer be necessary to establish that plaintiffs suffer special harm as distinguished from that suffered by the public at large.” This is no less the case merely because many other persons have been affected similarly (see United States v SCRAP, 412 US 669, 687-688; National Organization for Women v State Div. of Human Rights, 34 NY2d 416, 420).
It is noted that section 1403.3-5.07 of the New York City Noise Control Code (added by Local Laws, 1972, No. 57 of the City of New York, eff Sept. 1, 1972) reads:
"Rapid transit railroads.—(a) On or before one year from the effective date of this code, the administrator shall define *997 and submit to the city council for enactment into this code allowable sound levels and acoustical performance standards for the design and operation of new and existing rapid transit railroads, including but not limited to allowable sound levels and acoustical performance standards for rolling stock, track and track beds, passenger stations, tunnels, elevated structures, yards, depots and garages.
"Allowable sound levels and acoustical performance standards shall be based on the latest economically feasible and available technology for noise abatement in rapid transit railroads and on the latest scientific knowledge useful for indicating the kind and extent of all effects on public health, welfare, safety and comfort which can be expected from noises or combinations of noises generated by rapid transit railroads.
"(b) No person shall operate or permit to be operated a rapid transit railroad, including but not limited to its rolling stock, track and track beds, passenger stations, tunnels, elevated structures, yards, depots and garages so as to cause a violation of allowable sound levels or acoustical performance standards adopted by the city council pursuant to this section.”
No standards were ever submitted by the city’s Environmental Protection Administrator as required by this section. Respondents urge that the failure of the New York City Council to enact standards to be applied to the rapid transit railroads and the elaborate scheme for enforcement, under direction of said administrator pursuant to section 1403.3-2.01, preclude judicial scrutiny. Yet to uphold this argument would be to overlook the crucial fact that the official who failed to submit appropriate standards for noise control in the subway system and the official empowered to enforce standards is one and the same. This provides all the more reason to recognize petitioners’ standing. It was stated recently by this court in Boryszewski v Brydges (37 NY2d 361, 364, supra): "We are now prepared to recognize standing where, as in the present case, the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action. In the present instance it must be considered unlikely that the officials of State government who would otherwise be the only ones having standing to seek review would vigorously attack legislation under which each is or may be a personal beneficiary.”
On an application to dismiss a petition, made pursuant to *998 CPLR 7804 (subd [f]), only the petition may be considered and, apart from conclusional material, the facts alleged therein are deemed true and considered in their most favorable light in support of the petition (Matter of Ciminera v Sahm, 4 NY2d 400, 402 [article 78 proceeding to compel town officials to enforce ordinance]; Matter of Cutcher v Nyquist, 39 AD2d 810; Matter of Board of Educ. v Allen, 32 AD2d 985; 24 Carmody-Wait 2d, NY Civ Prac, § 145:315; see 8 Weinstein-Korn-Miller, NY Civ Prac, par 7804.08, p 78-121). Not considering the disposition as to the Metropolitan Transportation Authority from which appeal is not taken, there are allegations of violations of the Administrative Code, the Industrial Code and the Labor Law, as well as factual allegations of deleterious consequences to passengers and employees of the subway and school children. Petitioners include subway passengers and parents of school children subjected to noise. Although ultimately there would be a limited scope of inquiry, the first five "causes of action” in the petition, when tested at this juncture in the proceeding, should not be dismissed.
The sixth "cause”, relating to reports of the NYCTA, complains about those submitted to petitioner Abrams and seeks the delivery of certain reports to him. Section 1213 of the Public Authorities Law provides: "Copies of the annual report required to be made and submitted pursuant to section eighteen hundred fifty [now § 2500] of this chapter also shall be submitted to the mayor, comptroller and board of estimate.” Although reports must be submitted to the Board of Estimate, among others, the NYCTA is not required under the statute to deliver same to petitioner Abrams, a member of said board. Here, the Board of Estimate is not complaining about the contents of the reports received. (See, also, Matter of Abrams v Ronan, 36 NY2d 714.)
I dissent and vote that the order of the Appellate Division be modified by reversing so much of said order as affirms the judgment dismissing the first five causes of action set forth in the petition against respondents New York City Transit Authority and its members and that the application to dismiss said causes of action be denied and, except as so modified, that said order be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur in memorandum; Judge Cooke dissents and votes to modify in a separate opinion; Judge Fuchsberg taking no part.
*999 Order affirmed.