OPINION OF THE COURT
Emmett J. Schnepp, J.
The central question in this article 78 proceeding focuses on the respective jurisdictions of the respondents, the Division of Human Rights ("division”) and the Insurance Department of the State of New York ("department”), over acts of alleged *706 discrimination by the petitioners, the Rochester Hospital Service Corporation and the Genesee Valley Medical Care, Inc. (commonly referred to as Blue Cross and Blue Shield). One Jean M. Baden, a married woman, filed a complaint with the Division of Human Rights charging the petitioners with "an unlawful discriminatory practice relating to a place of public accommodation because of my marital status” for their refusal to issue her an insurance policy for single persons — in violation of article 15 of the Executive Law. After a preliminary investigation, the division determined that it had jurisdiction and that there was probable cause to believe that the petitioner’s acts constituted unlawful discrimination based on the complainant’s marital status. The division then scheduled a formal hearing to adjudicate the charges.
Blue Cross and Blue Shield provide hospital and medical care insurance to eligible subscribers in Monroe and five adjacent counties. Their policies include single and family contracts and are offered either on a group enrollment or an individual subscriber basis. The premiums for the insurance policies — single or family, group or individual subscribers — are claimed to be calculated on a community-rated basis — the utilization of health services by all the policyholders in the geographical area serviced by petitioners. The benefits provided under single and family contracts are the same. Policy conditions, their issuance, procedures and premiums are controlled and regulated by the department.
Petitioners seek an order declaring that the department has exclusive jurisdiction to control the totality of hospital and medical care insurance within the State, and enjoining the division from making any determinations concerning the validity of such policies and practices or the premium rates charged therefor. Petitioners, with whom the department agrees, contend that an adverse finding by the division would necessitate a complete restructuring of the basis upon which petitioners offer health insurance to eligible subscribers. They claim that such an order could not be unilaterally complied with by petitioners; any change in the rated premium structure must be approved by the Insurance Department. In short, they foresee chaos in New York State’s insurance business.
The division, in asserting its concurrent jurisdiction with the department, maintains that petitioners are included within the meaning of the term "wholesale and retail stores and establishments dealing with goods or services of any *707 kind”, and therefore, are "places of public accommodation”. It contends that petitioners are engaged in an unlawful discriminatory practice in refusing, withholding from and denying its facilities by reason of marital status. (Executive Law, § 292, subd 9; § 296, subd 2, par [a].) Moreover, it claims that petitioners have failed to exhaust their administrative and judicial remedies.
The abolition of discrimination based on race, creed, color, national origin, sex, disability or marital status is a fundamental public policy of New York, and the division exists to eliminate and prevent discrimination, inter alia, in places of public accommodation. (Executive Law, § 290 et seq.) Section 296 (subd 2, par [a]) of the Executive Law makes it an unlawful discriminatory practice for any person in charge of a "place of public accommodation * * * to refuse, withhold from or deny * * * any of the accommodations, advantages, facilities or privileges thereof * * * [because of the] marital status” of any person.
Subdivision 9 of section 292 of the Executive Law provides that when used in the article, "the term 'place of public accommodation’ * * * shall include * * * all places included in the meaning of such terms as: inns * * * or restaurants * * * buffets, saloons * * * icecream parlors * * * wholesale and retail stores and establishments dealing with goods or services of any kind, dispensaries, clinics, hospitals * * * swimming pools, laundries * * * barbershops * * * theatres * * * music halls, race courses * * * resort camps * * * bowling alleys, golf courses * * * pool parlors; garages * * * [and] public halls”. Neither insurance companies nor insurance policies are mentioned in section 292. Although the division argues that insurance companies are included in the language — "establishments dealing with goods or services of any kind”, a plain and clear reading of the statute suggests that the words "wholesale and retail” modify the words "stores and establishments”. If the phrase "establishments dealing with goods or services of any kind” was intended to stand alone, a comma would follow the word "stores” and the conjunction "and” would be omitted. This evidences an unambiguous legislative intent to qualify and restrict the meaning and scope of "stores and establishments”. While an insurance carrier may be an establishment providing services, it cannot be described as a "wholesale and retail” establishment. Furthermore, the type of service an insurance carrier provides is *708 not included within the meaning of the descriptive terms in the statutory phrase in which the words "stores and establishments” appear. The scheme of the definitional provision does not imply that insurance was intended to be included as a "place of public accommodation”.
Assuming arguendo that the meaning of "place of public accommodation” did include insurance carriers, a logical reading of section 296 would lead to absurd conclusions.[1] For example, section 296 (subd 2, par [a]) also prohibits places of public accommodation from discriminatorily denying any person "any of the accommodations, advantages, facilities or privileges thereof’ based on his or her "disability”. To interdict discrimination by insurance companies on the basis of disability would run counter to established law which gives insurers discretion to refuse coverage to an applicant who is already disabled, or to charge a higher premium in recognition of the increased risk.
Moreover, amendments to the Insurance Law and Human Rights Law do not indicate a legislative intent to prohibit discrimination based on marital status in insurance rate setting. Subdivision 10 of section 40 of the Insurance Law which deals specifically with insurance rates and discrimination provides that "no association, corporation [or] * * * organization * * * subject to the supervision of the superintendent of insurance shall make any distinction or discrimination between persons because of race, color, creed or national origin”. Marital status is not listed as an unlawful discriminatory rate classification. While section 40-e of the Insurance Law was enacted in 1975 to prohibit the discriminatory cancellation or refusal to issue or renew an insurance policy because of the marital status of the applicant and subdivision 2 of section 296 of the Executive Law was amended by the Laws of 1975 to include "marital status” as a prohibited basis of discrimination, subdivision 10 of section 40 remained unchanged. The failure to add "marital status” to subdivision 10 of section 40 evidences a legislative intent not to preclude premium differentials based on marital status.
Subdivision 2 of section 255 contained in article IX-C of the Insurance Law (nonprofit medical and dental indemnity, or hospital service corporations) provides that the Superintend *709 ent of Insurance may refuse to approve rates if he finds that "such rates are excessive, inadequate or unfairly discriminatory”. This language implies that rates may be discriminatory, but not unfairly so. In view of the language of subdivision 10 of section 40, it appears that rates, which take into account an applicant’s marital status, are not "unfairly discriminatory”. More importantly, however, subdivision 2 of section 255 establishes the department’s jurisdiction over questions concerning "unfairly discriminatory” rates; it is within the superintendent’s exclusive review.[2]
Although the wisdom of legislative grants of concurrent jurisdiction to administrative agencies to determine the same issue is "highly questionable, involving as it may duplicative proceedings and delays in decision making” (Long Is. Coll. Hosp. v Catherwood, 23 NY2d 20, 36), there have been occasions when the Legislature has done this. (See, generally, Matter of Board of Higher Educ. of City of N. Y. v Carter, 14 NY2d 138.) In view of the administrative tangle which concurrent jurisdiction creates, courts "should not * * * be astute to define the existence of concurrent jurisdiction unless no other reading of the statute is possible.” (Long Is. Coll. Hosp. v Catherwood, supra, p 36.) However, in Catherwood as here, "there is nothing in the statutory scheme to support a claim of concurrent jurisdiction. (Long Is. Coll. Hosp. v Catherwood, supra, p 36.)
Although prohibition is not available as a matter of right and is granted only in the sound discretion of the court, it is appropriate here. Petitioners have shown that the division is about to proceed in excess of its lawful jurisdiction and that redress by way of administrative appeal and subsequent judicial review of an adverse final determination is inadequate and insufficient. Moreover, it is apparent that the division’s hearing will not lead to a dismissal of the complaint for lack of jurisdiction for it has already asserted its jurisdiction. Since there is no procedure for an immediate administrative review of the division’s assertion of jurisdiction, and no issue requiring a factual determination, a writ of prohibition should properly issue.
Submit judgment.

. "It is a fundamental rule of statutory construction that a statute or legislative act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97.)

. The Superintendent of Insurance is vested with broad power to interpret, clarify, and implement the legislative policy of the Insurance Law. (See Insurance Law, §§ 10, 21; see, generally, Breen v Cunard Lines S. S. Co., 33 NY2d 508.)