In the Matter of MEDICAB OF NEW YORK, INC., Respondent, v NEW YORK STATE EMERGENCY MEDICAL SERVICES COUNCIL OF THE NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants, and COMMISSIONER OF TRANSPORTATION OF THE STATE OF NEW YORK, Intervenor-Appellant.

Third Department, January 25, 1979

APPEARANCES OF COUNSEL

*Jerome T. Levy (Ronald Pehr* and *Eugene M. Laks* of counsel), for appellants.

*Rubin Baum Levin Constant & Friedman (Gerald Harris* of counsel), for respondent.

*Frederick Goldfeder* for intervenor-appellant.

OPINION OF THE COURT

HERLIHY, J.

The petitioner is an operator of an invalid coach service and in March of 1976 it sought to extend its operations to include the Counties of Nassau and Suffolk. On March 23, 1976, it applied to the Department of Transportation (hereinafter Transportation) for a permit to operate as a contract carrier of passengers in the subject counties. On November 23, 1976, Transportation issued the permit.

On February 7, 1977, the petitioner applied, pursuant to sections 3007 and 3008 of the Public Health Law, to be registered with the Department of Health (hereinafter Health) as an invalid coach service in the subject counties. The application was denied and following an administrative appeal the New York State Emergency Medical Services Council (hereinafter State Council) upheld that denial.

Special Term, upon the proceeding before it, found that, as a matter of law, the occupation of invalid coach service required registration with Health and, accordingly, the permit issued by Transportation did not deprive Health of jurisdiction. However, Special Term did find that upon a review of the evidence the determination of the State Council was so unreasonable as to be arbitrary and a judgment annulling the determination was entered.

The initial question upon this appeal is whether or not the statutory licensing requirements would result in Transportation having the sole jurisdiction over the issue of public need for the proposed service.

Article 9 of the Transportation Law requires that contract carriers of passengers obtain a permit from Transportation for such service. Its section 200 declares:

"It is the policy of this state to regulate transportation by contract carriers of passengers by motor vehicle in such manner as to recognize and preserve the inherent advantages

of, and foster sound economic conditions in, such transportation and among such carriers and bus lines in the public interest; promote safe, adequate, economical and efficient service by such carriers of passengers by motor vehicle, and reasonable charges therefor without unfair or destructive competitive practices; and improve the relations between, and coordinate transportation by and regulation of contract carriers of passengers by motor vehicle and bus lines." Subdivision 2 of section 203 of the Transportation Law provides: "2. A permit shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing and able properly to perform the service proposed and to conform to this article and the requirements, rules and regulations of the commissioner thereunder, and that the proposed service, to the extent to be authorized by the permit, is or will be consistent with the public interest and the policy declared in section two hundred." Examination of the quoted sections reveals that Transportation would be solely concerned with the public interest and the policy as set forth in section 200 in reaching its conclusions regarding the issuance of a permit.

Health has been regulating and requiring the registration of invalid coach service since at least January 1, 1967, pursuant to former Part 20 of the State Sanitary Code (10 NYCRR). Those regulations defined an invalid coach and an invalid coach service in former 10 NYCRR 20.1 (b) and (c) as follows:

"(b) *Invalid Coach* means a motor vehicle, or other form of transport, specially equipped to carry, in addition to the driver, one or more recumbent individuals and an attendant. The term does not include an ambulance of an ambulance service registered pursuant to Part 800 of the State Ambulance Code.

"(c) *Invalid Coach Service* means regularly engaging, within the State of New York, in the transportation by invalid coach, by prior appointment, of infirm or invalid individuals not requiring medical emergency care in transit."

Former article 30 of the Public Health Law generally dealt solely with service rendered by the transportation for profit of individuals to and from hospitals or institutions providing hospital services as originally enacted by chapter 949 of the Laws of 1966. Subsequently former article 30-A, dealing with "Volunteer Ambulance Service" was added by chapter 713 of the Laws of 1967. It is apparent that prior to the enactment

by chapter 1053 of the Laws of 1974 of the current article 30 which is applicable to this proceeding, Health had acquired and/or asserted jurisdiction over ambulances and invalid coach service to the extent of requiring registration as to area served and permits.

It is thus not surprising to perceive that when the Legislature repealed former articles 30 and 30-A and enacted the present article 30 with a view toward explicit regulation of Emergency Medical Services, it specifically included the registration of invalid coach services as a part of the jurisdiction and/or duties of Health through the agency of emergency medical services counsels. Without unduly belaboring the point, even the most casual examination of article 30 of the Public Health Law mandates the conclusion that to the extent anyone will provide invalid coach service, registration with Health is required. The contention of the intervenor Transportation that the Legislature intended to limit the jurisdiction of Health only to those invalid coach services involved in rendering emergency aid finds no support either in the present article 30 or a consideration of jurisdiction as it existed prior to the enactment of the present article 30.

Section 3001 of the Public Health Law defines invalid coach service in its subdivision 6 as follows: "6. 'Invalid coach service' means an individual, partnership or corporation engaged in the transportation by motor vehicle or other form of transportation of invalid, infirm or disabled persons not requiring emergency care in transit."

It is readily apparent that the definition contained in article 30 of invalid coach service is not substantially different from that contained in former 10 NYCRR 20.1 as quoted hereinabove. Subdivision 5 of section 3007 and section 3008 of the Public Health Law expressly require Health to find a public need for new invalid coach services as a condition to the issuance of a statement of registration. Under such circumstances, it is impossible to conclude that the Legislature intended to limit registration solely to those contract carriers involved in medical emergency transportation. Furthermore, the Transportation Law and the Public Health Law do not necessarily require both agencies to be considering the "public interest" and the "public need" from the same perspective in view of the differing objectives declared as a matter of policy in section 200 of the Transportation Law, as quoted herein-

above, and section 3000 of the Public Health Law which provides:

"The furnishing of medical assistance in an emergency is a matter of vital concern affecting the public health, safety and welfare. Emergency medical care, the provision of prompt and effective communication among ambulances and hospitals and safe handling and transportation of the sick, injured and disabled are essential public health services.

"It is the purpose of this article to promote the public health, safety and welfare by providing for registration or certification of all ambulance services, registration of invalid coach services, the creation of regional emergency medical services councils and a New York state emergency medical services council which would develop minimum training standards for emergency medical technicians and minimum equipment and communication standards for certain emergency medical services."

■ Although finding duplicative administrative regulation is not a favored interpretation (*Long Is. Coll. Hosp. v Catherwood*, 23 NY2d 20) here the statutes are not purely duplicative and the statutes admit no other reading than that both Transportation and Health have authority on the matter in the instant case. The respective statutes may overlap because they deal with jurisdictional exercises for different purposes over the same subject, but they are not in direct conflict. In the present case, Special Term has properly concluded that the findings of Transportation upon which its permit was issued are not conclusive on Health.

As the statutes presently stand, both Transportation and Health have jurisdiction over invalid coach services to the extent that Health has jurisdiction based upon the definition of invalid coach services in section 3001 of the Public Health Law as quoted hereinabove. To the extent that a waste of administrative expertise and citizen time and money must necessarily result from the amount of duplication which the legislative scheme apparently causes, those problems are better dealt with by the Legislature.

The question of jurisdiction in this particular case does not end with the finding that there are situations where both Health and Transportation would have jurisdiction.

Transportation correctly notes that Health in subdivision (14) of section 800.3 of its State Emergency Medical Services Code (10 NYCRR 800.1 *et seq.)* has defined invalid coach

service being limited to *"transit to or from facilities providing medical care"* (emphasis supplied). At first blush, such an interpretation would seem to be inconsistent with the broad definition of subdivision 6 of section 3001, as quoted hereinabove. However, section 3016 of the Public Health Law provided as follows: "All rules and regulations heretofore adopted by the commissioner pertaining to all ambulance services and *invalid coach services* shall continue in full force and effect as rules and regulations until duly modified or superseded by rules and regulations hereafter adopted and enacted by the state council pursuant to section three thousand two of this article." (Emphasis supplied.) It thus becomes apparent that the Legislature did not intend to include all coach service provided to invalids within its definition of invalid coach service although the definition was, upon its face, all inclusive, because, as quoted hereinabove, former 10 NYCRR 20.1 in its subdivision (b) specifically limited the meaning of invalid coach to vehicles carrying besides a driver "one or more recumbent individuals and an attendant."

The application of the petitioner to Health for registration described the vehicle as being modified for use by wheelchair and ambulatory passengers.* Such a use is not by "recumbent" passengers as such word is normally defined. Furthermore, the application indicates that the *driver* is the only attendant in the vehicle and, accordingly, the vehicle does not meet the definition of an invalid coach as such was defined in the regulations at the time article 30 of the Public Health Law was enacted. It is true that the petitioner sought registration for the purpose of transporting disabled persons to and from hospital facilities for rehabilitation programs on an outpatient basis, and that would fall within the current definition of individual coach service in the regulation.

■ However, since it does not appear that the Legislature intended to give Health jurisdiction except when the service was such as to provide an attendant and concerned "recumbent", disabled or infirm persons, Health should have dismissed the application as being unnecessary.

At the argument, counsel for the Health and Transportation

---

* The application under the subtitle "Business Operation" provides in part: "To satisfy Medicab's requirements, the bench seats are either removed to the rear and the vans are modified to accommodate four wheelchairs and four ambulatory passengers, or they are removed altogether for six wheelchairs and one ambulatory passenger."

Departments were of the opinion there would be a continuing conflict as to jurisdiction. It seems appropriate to suggest that the matter be brought to the attention of the Legislature for its consideration and to prevent unnecessary litigation. The present record on appeal consists of 835 pages.

The judgment should be modified, on the law and the facts, by striking so much thereof as directed the registration of petitioner pursuant to article 30 of the Public Health Law, and, as so modified, affirmed, with costs to the petitioner against the New York State Department of Health.

SWEENEY, J. P., KANE, MAIN and MIKOLL, JJ., concur.

Judgment modified, on the law and the facts, by striking so much thereof as directed the registration of petitioner pursuant to article 30 of the Public Health Law, and, as so modified, affirmed, with costs to the petitioner against the New York State Department of Health.