OPINION OF THE COURT
Larry M. Himelein, J.
The question posed by this case is whether the sole asset of the estate — $30,000 plus accrued interest — is subject to recovery by the Social Services Department pursuant to Social Services Law § 369.
Decedent Hazel Farrington Cox was admitted to the Cattaraugus County Nursing Home in Machias on or about September 26, 1994, and thereafter applied for medical assistance (MA) from the Cattaraugus County Department of Social Services (DSS). A MA case was opened for Ms. Cox on November 1, 1994. On December 19, 1995, decedent’s residence was sold and $30,000 from the net proceeds was placed into an escrow account. Ms. Cox died on December 31, 1996.
DSS has moved for orders directing the executrix to file an accounting and pay their claim, contending that pursuant to the regulations of the New York State Department of Social Services the real property owned by decedent while she was a MA recipient constitutes a resource that rendered her ineligible to receive MA if she was not reasonably expected to be discharged and returned home. Under the regulations, DSS could not require liquidation of the property if the recipient intended to return home, even if that intention was not a reasonable possibility. In that case, a lien could be placed against the property (see, Social Services Law § 369 [2] [a] [ii]). Here, DSS notified decedent that they intended to impose a lien on the property because DSS believed that decedent would never return home. After notice and an opportunity to be heard, the lien was filed on or about July 14, 1995.
DSS contends that they are entitled to recover from decedent’s estate for all medical assistance furnished to decedent prior to her death and has moved for summary judgment on their claim. The executrix has cross-moved for summary judgment on the ground that the claim is unenforceable because New York State has not developed criteria and a procedure to waive recovery in cases where recovery would impose an undue hardship under Social Services Law § 369 (5). DSS contends that the estate lacks standing to challenge the attempted recovery here because the executrix has raised no factual claim *85 of undue hardship. DSS also alleges that even if part of the statute were invalid, severability principles render the salient portions of the statute enforceable against the estate.
As the executrix points out, in 1993 the Federal Medicaid law was amended to require that each State Medicaid program implement an estate recovery plan (42 USC § 1396p [b]). Several “safety valves”, however, limited or forbade recovery in certain instances, including cases where there was a surviving spouse (42 USC § 1396p [b] [2]), or where recovery would impose an “undue hardship” (42 USC § 1396p [b] [3]).
The State Medicaid Manual, published by the Federal Medicaid agency (Federal Health Care Financing Administration [HCFA]), provides for the waiver of recovery when estate recovery “would work an undue hardship” (§ 3810 [C]). The Manual notes that the legislative history requires that special consideration be given in cases where the estate subject to recovery is (1) the sole income-producing asset of the survivors, (2) a homestead of modest value, or (3) other compelling circumstances exist (§ 3810 [C] [1]). HCFA suggests that States “consider” these examples but does not require that they be incorporated into State regulations (ibid.). The Manual also requires that the States adopt procedures that would permit affected individuals to apply for an undue hardship waiver (§ 3810 [D]).
In 1994, presumably because of the Federal requirements, the State Legislature enacted subdivision (5) of Social Services Law § 369 which provides for the waiver of recovery “in cases of undue hardship, as determined pursuant to the regulations of the department in accordance with criteria established by the secretary of the federal department of health and human services” (L 1994, ch 170, § 452). The New York State Department of Health (DOH) has drafted proposed regulations and is presently waiting for approval from the Governor’s Office of Regulatory Reform before submitting the proposed regulations to the Department of State for publication. As presently drafted, those regulations will provide that “undue hardship” may exist when the estate consists of a family farm or family-owned and operated business or in other compelling circumstances as determined by the Social Services district on a case-by-case basis. Counsel for DOH, in a letter to counsel for DSS, noted that waiver might also be appropriate when the estate consists of a home of modest value and also indicated that Social Services districts have the obligation to evaluate claims of undue hardship, even though the regulations have yet to be enacted.
*86 It is the lack of regulations regarding the handling of hardship waivers that the executrix relies on, contending that there is no procedure an applicant can follow to apply for a hardship exemption and no process by which any such application could be adjudicated. The only remedy, asserts the executrix, is to dismiss this recovery action (and, presumably all other Medicaid recovery actions in New York) until regulations are adopted. She also argues that 42 USC § 1396a mandates uniform State-wide Medicaid programs and administrative chaos would result if each of New York’s 58 local Social Services districts adopted their own rules.
The first issue is whether the executrix has standing to challenge the failure of the State to adopt the regulations. Because the executrix has made no factual claims that might establish an undue hardship, DSS contends that she has no standing to challenge the State’s failure to adopt undue hardship regulations.
In Society of Plastics Indus. v County of Suffolk (77 NY2d 761), the Court of Appeals discussed standing in the context of the State Environmental Quality Review Act (SEQRA; ECL art 8). There, a sharply divided Court held that, where a challenge was made to Suffolk County’s “plastics law”, standing under SEQRA was available only to those with noneconomic interests. Thus, a trade organization and a producer of plastics were found to lack standing to challenge the law because they could allege no threat of injury “different in kind or degree from the public at large” (77 NY2d, at 778; see also, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428). Both of these cases, however, concern the issue of standing under SE-QRA, which may or may not apply here. Indeed, the Court in Society of Plastics Indus. (supra) noted that in land use matters especially, the Court has long required that a plaintiff show direct harm or injury different from that of the public at large (77 NY2d, at 774).
In Matter of Dairylea Coop. v Walkley (38 NY2d 6), the Court reinforced a “zone of interest” test in determining whether a petitioner had standing. The Court there held that a petitioner was only required to show that a proposed administrative action would in fact harm the petitioner and that the interest asserted was arguably within the zone of interest the statute was meant to protect (supra, 38 NY2d, at 9). Even applying that standard, which seems broader than the standard applied in the SEQRA cases, the executrix has failed to show, or even allege, how she would be harmed by the failure of the *87 State to adopt regulations. Accordingly, this court finds that the executrix lacks standing to challenge the State’s failure to adopt regulations on the issue of “undue hardship”.
Anticipating a claim that the executrix could not allege a hardship because there was no procedural mechanism to do so and recognizing that the Appellate Division could review the issue in the interests of justice without a specific hardship being alleged in this court, the court will address the substantive issue of whether the State’s failure to adopt regulations requires the dismissal of this recovery action until regulations have been adopted. The executrix contends that because there is no present mechanism to apply for the hardship exemption and no procedure by which such an application can be adjudicated, the State has essentially stripped the estate of these protections. Thus, there is no way for the executor or the court to determine the validity of the DSS claim against the estate. Moreover, to the extent that the Cattaraugus County DSS relies on its own local policies, unapproved by the State agency, its actions contradict 42 USC § 1396a (a), Social Services Law § 20 (3) (a) and 18 NYCRR 300.6, all of which, the executrix contends, require Medicaid programs to be uniform State-wide.
This court is reluctant to hold that no Medicaid recoveries may be sought until the State has adopted the regulations it will use to determine whether a given attempted recovery will constitute an undue hardship. Rather, this court believes that utilization of the fairly broad rule contained in section 3810 (C) of the State Medicaid Manual, until State regulations are adopted, is the best procedure to follow. The court also believes this is the broadest interpretation possible of the Federal regulations and should be utilized until the State has narrowed the “undue hardship” criteria, if indeed it does.
The HCFA Medicaid Manual suggests, relying on the legislative history, that undue hardship may include cases where the estate subject to recovery is (1) the sole income-producing asset of survivors, such as a family farm or business, (2) a homestead of modest value, or (3) other compelling circumstances exist. The Medicaid Manual notes, however, that the State is not required to incorporate all of these examples. Nonetheless, by applying all of them until regulations are actually adopted, an estate will receive a benefit it might or might not receive after regulations are adopted. The HCFA Medicaid Manual also permits the State agency to reject an undue hardship claim when estate planning methods were utilized to avoid estate *88 recovery. However, by not adopting regulations, the State is effectively foreclosed from taking advantage of this provision, which again benefits the estate a Social Services department seeks to recover against. In fact, the Federal guidelines in the HCFA Medicaid Manual appear to be broader than those contained in the State regulations now under consideration.
While the executrix argues that there are unanswered questions, e.g., what is “modest value” in New York or what constitutes “compelling circumstances”, those questions can be resolved on a case-by-case basis. Clearly, what constitutes “modest value” may well have a different meaning in Scarsdale than it does in Salamanca. Moreover, “compelling circumstances” must, of course be determined on a case-by-case basis. This court believes that these claims can be resolved equitably in the various Surrogate’s Courts without any undue difficulty. Moreover, the proposed regulations under consideration do not appear to be any more detailed than the guidelines in the HCFA Medicaid Manual.
Accordingly, the cross petition filed by the executrix is denied. The motion by DSS for partial summary judgment is granted, with a trial to be held on the amount due.